The STATE of Texas

v.

**Thomas MARKOVICH, Appellee.**

No. 1979–00.

Court of Criminal Appeals of Texas.

May 29, 2002.

Kenneth E. Houp, Jr., Austin, for Appellant.

Giselle Horton, Assist. DA, Austin, for State.

### OPINION

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, HERVEY, HOLCOMB, and COCHRAN, J.J., joined.

Appellee was charged with the Class B misdemeanor offense of Disrupting [a] Meeting or Procession. TEX. PEN.CODE § 42.05. Appellee filed a pre-trial motion to quash the complaint by attacking the constitutionality of § 42.05. The trial court granted appellee's motion to quash the complaint. The State appealed. The Third Court of Appeals reversed the trial judge's decision. *State v. Markovich*, 34

S.W.3d 21 (Tex.App.-Austin 2000). We granted appellee's petition for discretionary review to decide whether the curtailment of others' First Amendment rights is an element of § 42.05 and to determine if the statute is unconstitutionally vague on its face. We will affirm.

## I.

■ Appellee was charged with disrupting a public meeting.[1] Appellee subsequently filed a pre-trial motion to quash claiming, *inter alia*, that § 42.05 is facially vague in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Texas Constitution.[2] In addition, he argued that the State's information was defective because it failed to include the substantial impairment language that was provided as a narrowing construction by this Court in *Morehead v. State*, 807 S.W.2d 577, 581 (Tex.Crim.App.1991).[3] The State made an oral motion to amend the information to add a clause that included the substantial impairment language. The trial court granted both the State's and appellee's motions.[4]

The State appealed the trial court's decision. On appeal the State argued that § 42.05 was not impermissibly vague. *Markovich*, 34 S.W.3d at 25.[5] It contended that while the operative words in § 42.05 are not defined, the statute never-

---

**1.** Since this petition for discretionary review involves a pre-trial motion, no record has been developed regarding the specific facts of appellee's case. However, at the pre-trial hearing appellee's attorney asked the trial judge to take judicial notice of the probable cause affidavit The affidavit provides in pertinent part: "On or about 11–14–98 at about 11:00 A.M. while providing security at a speech by President George Bush, I Cpl. Brian Baster (TX DPS) observed Thomas Markovich stand up and shout over the voice of President Bush 'bull shit.' Markovich then began shouting other protests, thereby causing the speaker to stop. The meeting was disrupted by Markovich. All events occurred in the house gallery of the Texas State Capitol in Austin, Travis County, TX."

**2.** The First Amendment was made applicable to the States by the Due Process clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625 (1925).

**3.** Section 42.05 provides in relevant part: "A person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance." In *Morehead*, 807 S.W.2d at 581, we held that § 42.05 can be rendered constitutional only if it is construed to criminalize physical acts or verbal utterances that *"substantially* impair the ordinary conduct of lawful meetings ...." (emphasis in original).

**4.** The amended information provides in pertinent part that: "Thomas Markovich, the Defendant, on or about the 14th day of November A.D. 1998, with the intent to prevent and disrupt a lawful meeting, to wit: A speech given by former President George Bush, did then and there obstruct and interfere with said meeting by physical action and verbal utterance, to wit: the Defendant stood up and shouted, causing former President Bush to stop speaking, and the Defendant's physical acts and verbal utterances substantially impaired the ordinary conduct of the said lawful meeting."

**5.** Although the trial court did not expressly set aside the information on vagueness grounds, the Third Court of Appeals nevertheless addressed the merits of the State's vagueness claim since appellant urged the vagueness claim in his motion to quash, and it was clear from the trial court's remarks that it felt that the statute did not provide determinate guidelines for law enforcement. *See Markovich*, 34 S.W.3d at 25. At the pre-trial hearing the trial judge stated: "I am going to declare the statute unconstitutional as being overbroad ... in light of the fact that anyone could decide to stop speaking, and if that were to happen, then police officers could decide to remove people simply because they were holding up signs, and in their mind, that would be interrupting a public meeting."

theless gives police officers and other persons of ordinary intelligence reasonable notice of what is proscribed. *Id.* Appellee argued, among other things, that this Court's opinion in *Morehead* aggravated, rather than ameliorated, § 42.05's vagueness by requiring an officer to make a judgment call as to whether a person's conduct substantially interrupts a meeting. *Id.* at 25. Moreover, he claimed that by limiting the application of § 42.05 to conduct that curtails the exercise of others' First Amendment rights, *Morehead* forces police officers to know and apply First Amendment jurisprudence before making an arrest. *Id.* at 26.

The Third Court of Appeals concluded that it did not understand this Court's holding in *Morehead* as making the curtailment of the exercise of others' First Amendment rights as an element of the offense. *Id.* In addition, it held that § 42.05, as construed in *Morehead,* is sufficiently clear and understandable to satisfy the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution. *Id.*

## II.

We first turn to the issue of whether the curtailment of others' First Amendment rights is an element of the offense of disrupting a public meeting. Appellee contends that the Third Court of Appeals erred by concluding that the phrase "thereby curtail others' First Amendment rights" was not meant to be an element of the offense of disrupting a meeting, but simply as a phrase expressing this Court's belief that its narrowing construction properly balances the First Amendment rights of all parties.

In *Morehead* the appellant argued that § 42.05 was impermissibly overbroad in that it prohibited some constitutionally protected activity. 807 S.W.2d at 579. Al-

though we concluded that the statute was overbroad, we held that it was susceptible to a narrowing construction that would be consistent with its language and apparent purpose. We explained:

> Given the competing First Amendment freedoms at stake, § 42.05 can be rendered constitutional if it is construed to criminalize only physical acts or verbal utterances that *substantially* impair the ordinary conduct of lawful meetings, and thereby curtail the exercise of others' First Amendment rights.

*Id.* at 581 (emphasis in original).

Appellee argues that because *"Morehead* repeatedly stresses the importance of the free-speech-curtailment element" it is apparent that we intended it to be an added element to § 42.05. In *Morehead* we explained that although the State has a duty to ensure that an individual's unruly assertion of his right of free expression does not imperil another citizen's First Amendment freedoms, it could not forbid expressive conduct that is merely "provocative and challenging." *Morehead,* 807 S.W.2d at 580. Therefore, with regard to § 42.05, we concluded that the best way to ensure that the rights of all individuals are protected is to determine whether the actor's behavior substantially impaired the conduct of the meeting before his or her actions could be criminalized. *Id.* If an actor substantially interferes with a meeting, then it necessarily follows that others' constitutionally protected rights have been infringed upon. This concept was added as one of further explanation. We did not intend that it add anything in the way of a substantive requirement.

Moreover, it is apparent from the cases in which we have discussed the narrowing construction that was applied in *Morehead* that we have never considered curtailment of others' First Amendment rights to be an element of § 42.05. In *Long v. State,*

931 S.W.2d 285 (Tex.Crim.App.1996), this Court was asked to determine the constitutionality of the stalking statute. We turned to *Morehead* as an example of this Court's use of a narrowing construction "that increased the intensity of the conduct under scrutiny." *Id.* at 296. We explained, "In *Morehead* this Court construed the words 'obstruct' and 'interferes' as applying only to conduct which substantially impaired the ordinary conduct of lawful meetings." *Id.* We did not consider the curtailment of others' First Amendment rights to be part of the narrowing construction.

We also referred to *Morehead's* narrowing construction in *Olvera v. State,* 806 S.W.2d 546 (Tex.Crim.App.1991). In *Olvera* we determined the constitutionality of a picketing statute. As in *Long,* we used § 42.05 as an example of a statute that was readily subject to a narrowing construction:

> In *Morehead,* we recently applied a narrowing construction to *Tex. Penal Code Ann.* § 42.05.... We noted that the broad language of § 42.05 encompasses "the full range of possible disturbances, from the most minor to the most significant," but concluded that § 42.05 could pass a facial overbreadth challenge by construing it to criminalize only physical acts or verbal utterances that substantially impair the ordinary conduct of lawful meetings and thereby curtail the exercise of others' First Amendment rights.

*Id.* at 552 (citations omitted). Appellee considers the inclusion of the curtailment phrase in our discussion as proof that the curtailment of others' First Amendment

rights is an element of § 42.05. What appellee fails to acknowledge is that in our discussion of *Morehead* we also explained that the narrowing construction concerned the *amount of interference* to a public meeting. *See id.* at 552 (emphasis added). We did not, however, indicate that we considered the narrowing construction to include the type of impact that such interference had on others' rights.

■ For the reasons discussed, the Court of Appeals did not err in concluding that the curtailment of others' First Amendment rights was not intended to be included as a part of the narrowing construction expounded in *Morehead.* Appellee's first ground for review is overruled.

### III.

■ Appellee also claims that § 42.05 is unconstitutionally vague on its face.[6] The appropriate standard to be applied in cases making facial challenges to state statutes has been the subject of debate within the U.S. Supreme Court. *Washington v. Glucksberg,* 521 U.S. 702, 739, 117 S.Ct. 2302 (1997) (Stevens, J., concurring). *Compare, e.g., United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (explaining that a facial challenge is the most difficult to mount successfully since the challenger must establish that "no set of circumstances exists under which the Act would be valid"), *with City of Chicago v. Morales,* 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion) (arguing that the *Salerno* standard has never been the decisive factor in any case and addressing a facial attack to a statute on the grounds that vagueness permeated the text). Appellee

---

**6.** We need not decide today whether a person charged solely with conduct that does not implicate First Amendment rights has standing to bring a facial challenge to a statute which under some circumstances might infringe upon First Amendment rights. In the present case, since it is clear from the charging instrument that appellee's conduct does implicate First Amendment rights, appellee has standing to make a facial challenge to § 42.05.

concedes that the application of the statute is valid in some situations. However, since it has been suggested by the Supreme Court that in situations where a law reaches a "substantial amount of constitutionally protected conduct" a facial challenge can be made to the statute even when it conceivably could have some valid applications, we will address the merits of appellee's claim. *See Kolender v. Lawson,* 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)).

 A statute will be declared unconstitutionally vague if "its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The statute must provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Id.* at 108, 92 S.Ct. 2294; *Long,* 931 S.W.2d at 287. Moreover, the statute must provide explicit guidelines for those who enforce them. *Grayned,* 408 U.S. at 108, 92 S.Ct. 2294; *Long,* 931 S.W.2d at 287. Finally, where First Amendment freedoms are involved, the law must be sufficiently definite in order to avoid chilling expression. *Grayned,* 408 U.S. at 108, 92 S.Ct. 2294; *Long,* 931 S.W.2d at 287.

 Appellee argues that § 42.05 is impermissibly vague because it fails to provide determinative enforcement guidelines to police. Relying on *Kolender v. Lawson,* appellee asserts that, "Proper enforcement of the statute would require officers to know and apply delicate issues of First Amendment jurisprudence before making an arrest by judging when the normally protected form of expression of heckling loses its protected character because it is suppressing the First Amendment right of others." He also argues that the statute is

vague because it requires individuals to "guess as to whether their contemplated conduct is prohibited by caselaw because it might curtail others' free speech rights."

Appellee's facial vagueness claim fails for several reasons. First, as we have just explained, the curtailment of others' rights is not an element of § 42.05. As such, the statute does not require police officers or citizens to "know and apply delicate issues of First Amendment jurisprudence." Section 42.05 simply prohibits individuals from intentionally engaging in behavior that has the effect of substantially disrupting or preventing the ordinary conduct of a meeting. Section 42.05 reaches only the disorderly physical or verbal conduct of individuals who are acting with the specific intent to prevent or disrupt a meeting. A person of ordinary intelligence knows the type of conduct that is likely to cause an impairment to the ordinary conduct of a meeting.

 The statute likewise provides law enforcement with determinative guidelines. Contrary to appellee's contention, the statute in the present case is distinguishable from that which was held by the U.S. Supreme Court to be unconstitutional on vagueness grounds in *Kolender. Kolender* involved a California disorderly conduct statute that required a person to "identify" and "account for his presence when requested by an officer to do so." 461 U.S. at 354, 103 S.Ct. 1855. The Court found the statute to be impermissibly vague:

> It is clear that the full discretion accorded to the police to determine whether the suspect has provided a "credible and reliable" identification necessarily "[entrusts] lawmaking 'to the moment-to-moment judgment of the policeman on his beat'" .... [The statute] "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,'" and "confers on police a virtually unre-

strained power to arrest and charge persons with a violation".... Although the initial detention is justified, the State fails to establish standards by which the officers may determine whether the suspect has complied with the subsequent identification requirement.

*Id.* at 360–61, 103 S.Ct. 1855 (citations omitted). Under § 42.05 police officers are not given the same discretion. As the Third Court of Appeals correctly asserted, "Whether a person's conduct substantially impairs the ordinary conduct of a meeting is an objective standard that does not acquire its meaning from a particular officer's determination of what constitutes a 'substantial' impairment." *Markovich,* 34 S.W.3d at 26. Although an officer must initially make a determination as to whether the statute has been violated before he makes an arrest, the officer's assessment of the defendant's conduct is not the defining element of the offense. *Id.*

Because § 42.05 "communicates its reach in words of common understanding," *Boos v. Barry,* 485 U.S. 312, 332, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), it provides guidelines for law enforcement and fair notice to citizens as to the type of conduct that is proscribed. Accordingly, we hold that § 42.05 is not unconstitutionally vague on its face. The judgment of the Third Court of Appeals is affirmed.

KEASLER, J., filed a dissenting opinion joined by PRICE and JOHNSON, J.J.

KEASLER, J., filed this dissenting opinion in which PRICE and JOHNSON J., joined.

## *OPINION*

The crux of the majority's opinion deals with the following questions: "Exactly how much did we rewrite § 42.05 in *Morehead v. State*[1]? Did we add two new elements to the offense, or only one?" The majority answers "Just one." But this answer begs the deeper question, which I would tackle first: "By what authority did we rewrite the statute in the first place?" I believe *Morehead* erred to rewrite § 42.05. Omitting those additions to the statute, I would consider § 42.05 on its face and conclude that it is unconstitutionally vague and overbroad.

### I.

In *Morehead,* the defendant was convicted under § 42.05 and on appeal argued that the statute was overbroad. The court of appeals held that the statute, read literally, was unconstitutionally broad, but the statute could "be narrowed to reach only unprotected expression if it is construed to prohibit only speech and physical action incompatible with the normal activity of a particular place at a particular time."[2] In his petition for discretionary review, the defendant argued that "it was inappropriate for the court of appeals to assume the legislative prerogative and rewrite § 42.05 in order to save it."[3]

We disagreed. Although we found § 42.05 unconstitutionally overbroad, we nevertheless concluded that we did not need to invalidate the statute if it was "susceptible to a narrowing construction consistent with its language and apparent purpose."[4] While we conceded that a "[a] court may not simply assume the legislative prerogative and rewrite a statute in order to save it if the statute is not readily

---

1. 807 S.W.2d 577 (Tex.Crim.App.1991).

2. *Id.* at 579, quoting *Morehead v. State,* 746 S.W.2d 830, 835 (Tex.App.-Dallas 1988).

3. *Id.* at 579 (internal brackets omitted).

4. *Id.* at 581, citing *Dubuisson v. State,* 572 S.W.2d 694, 699 (Tex.Crim.App.1978).

subject to a narrowing construction," [5] we concluded that § 42.05 was "readily subject to a narrowing construction." [6]

Judge Clinton dissented. He said § 42.05 was not "readily subject to a narrowing construction." [7] He argued that "[t]he only way for the statute to be saved is for this Court to add considerable language to it; i.e., for us literally to engage in judicial legislation." [8] He contended the Court should hold that § 42.05 was facially overbroad.[9]

## II.

We should not lightly overrule precedent.[10] Indeed, we have stated that "[o]ften, it is better to be consistent than right." [11] The United States Supreme Court has said essentially the same thing: "in most matters it is more important that the applicable rule of law be settled than that it be settled right." [12]

But "[s]tare decisis is not an inexorable command." [13] Rather, as Justice Kennedy has argued, "[t]he justifications for ... stare decisis must rest upon the Court's capacity, and responsibility, to acknowledge its missteps." [14]

The doctrine of stare decisis is most compelling in statutory interpretation.[15] This is because the Legislature is always free to "alter what we have done." [16] "But it is another thing entirely to ignore error in extending discredited reasoning to previously unspoiled statutory provisions." [17] When a holding from this Court improperly rewrites a statute, we should correct that error, even if it requires overruling precedent. As Justice Stevens has argued, judicial activism "represents such a radical departure from the proper role of this Court that it should be opposed whenever the opportunity arises." [18]

## III.

Our leading case on statutory construction is *Boykin v. State*.[19] There we held that if the meaning of the statutory text should have been plain to the legislators who voted on it, we should give effect to that meaning unless it leads to an absurd result.[20]

5. *Id.,* citing M. NIMMER, Nimmer on Freedom of Speech § 4.11[D] at 4–156 (1984).

6. *Id.*

7. *Id.* at 581 (Clinton, J., dissenting).

8. *Id.*

9. *Id.* at 582.

10. *Awadelkariem v. State,* 974 S.W.2d 721, 725 (Tex.Crim.App.1998).

11. *Malik v. State,* 953 S.W.2d 234, 236 (Tex. Crim.App.1997).

12. *Agostini v. Felton,* 521 U.S. 203, 235, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

13. *Payne,* 501 U.S. at 828, 111 S.Ct. 2597.

14. *Nixon v. Shrink Missouri Government PAC,* 528 U.S. 377, 406, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Kennedy, J., dissenting).

15. *See Hilton v. South Carolina Public Railways Com'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991).

16. *Patterson v. McLean Credit Union,* 491 U.S. 164, 172–73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

17. *Reno v. Bossier Parish School Bd.,* 528 U.S. 320, 363, 120 S.Ct. 866, 145 L.Ed.2d 845 (2000) (Souter, J., concurring and dissenting)

18. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 98–99, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (Stevens, J., dissenting and concurring).

19. 818 S.W.2d 782 (Tex.Crim.App.1991).

20. *Id.* at 785.

Our holding in *Boykin* must be considered in connection with Supreme Court caselaw governing analysis of statutes containing constitutional issues. Justice Holmes wrote long ago that "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." [21] We should follow this canon out of respect for our Legislature, "which we assume legislates in the light of constitutional limitations." [22] This doctrine seeks "to minimize disagreement between the Branches by preserving . . . [legislative] enactments that might otherwise founder on constitutional objections." [23]

But this doctrine "is not designed to aggravate that friction by creating (through the power of precedent) statutes foreign to those . . . [that the Legislature] intended, simply through fear of a constitutional difficulty." [24] Instead, the doctrine is meant to serve a "basic democratic function of maintaining a set of statutes that reflect, rather than distort, the policy choices that elected representatives have made." [25]

As the Supreme Court has stated, "[s]tatutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature. Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress." [26]

## IV.

It has long been a tenet of First Amendment law that, when evaluating a facial challenge to a statute, if it is "readily susceptible to a narrowing construction that would make it constitutional," it should be upheld.[27]

But narrowing constructions should not be adopted casually. The Supreme Court has made clear that, even when a party's proposed narrowing construction "might avoid . . . [a] constitutional problem," the Court is nevertheless "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." [28] When a statute is utterly open-ended, it will provide "no guidance whatever for limiting its coverage." [29] "The key to application of this principle is that the statute must be 'readily susceptible' to the limitation; . . . [a court should] not rewrite a state law to conform it to constitutional requirements."[30]

21. *Almendarez–Torres v. United States*, 523 U.S. 224, 237, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916).

22. *See Rust v. Sullivan*, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); *Almendarez–Torres*, 523 U.S. at 238, 118 S.Ct. 1219.

23. *Almendarez–Torres*, 523 U.S. at 238, 118 S.Ct. 1219.

24. *Id.*

25. *Id.*

26. *Salinas v. United States*, 522 U.S. 52, 59–60, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (internal citation omitted).

27. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (internal quotations omitted).

28. *Stenberg v. Carhart*, 530 U.S. 914, 944, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000); *Boos v. Barry*, 485 U.S. 312, 330, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988).

29. *Reno v. A.C.L.U.*, 521 U.S. 844, 884, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

30. *Am. Booksellers Ass'n*, 484 U.S. at 397, 108 S.Ct. 636.

Most importantly, a court may not add language to a statute as a way of narrowing it. The Supreme Court addressed this exact issue more than a century ago. In addressing Kentucky's election law, the Court noted that the proposed way of limiting the statute's reach was "not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there."[31] The question, according to the Court, was "whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only."[32] The Court answered that question, "No," recognizing that "[t]o limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."[33]

The Kentucky Supreme Court addressed this issue more recently in *Musselman v. Commonwealth*.[34] Musselman was convicted under Kentucky's harassment statute, and he appealed arguing the statute was impermissibly broad. The lower appellate court found the statute constitutional by construing it as limited to certain situations. The Kentucky Supreme Court rejected this approach. The Court stated that the problem with the lower appellate court's analysis was that "the limiting language utilized to avoid unconstitutionality ... [was] supplied by the Court of Appeals and not by the statute."[35] The Court explained: "While we

agree that if the words of a statute are ambiguous the court can and should so construe it as to render it constitutional, clearly the judiciary lacks power to add new phrases to a statute to provide a new meaning necessary to render the statute constitutional."[36] And again, the Court stated: "We reject the argument that a criminal statute facially unconstitutional can be 'authoritatively construed' by the courts to render it constitutional, if this is taken to mean the court can introduce an additional concept not present in the statute as written by the legislature."[37]

The Court of Appeals for the Third Circuit has also discussed this issue, setting forth two possible ways of narrowing a statute: "(a) assigning a narrow meaning to the language of the statute itself, or (b) deleting that portion of the statute that is unconstitutional."[38] Adding language to the statute is not an option. That court elaborated on this notion in *Planned Parenthood v. Farmer*.[39] There, in refusing to rewrite New Jersey's Partial–Birth Abortion Ban Act, the court explained that "[t]he Act, pure and simple, is not susceptible much less 'readily susceptible' to a narrowing construction."[40] Instead, to narrow it in the manner urged on appeal "would entail a complete rewriting, if not 'brute force.'"[41] That court "reject[ed] out of hand" the Seventh Circuit's observation in *Hope Clinic v. Ryan* that "courts do it all the time"[42] and instead echoed the

---

31. *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1875).

32. *Id.*

33. *Id.*

34. 705 S.W.2d 476 (Ky.1986).

35. *Id.* at 477.

36. *Id.* (emphasis deleted).

37. *Id.* at 478.

38. *A.C.L.U. v. Reno*, 217 F.3d 162, 177 (3rd Cir.2000), *cert. granted*, 532 U.S. 1037, 121 S.Ct. 1997, 149 L.Ed.2d 1001 (2001).

39. 220 F.3d 127 (3rd Cir.2000).

40. *Id.* at 141.

41. *Id.*

42. *Id.*, quoting *Hope Clinic v. Ryan*, 195 F.3d 857, 865 (7th Cir.1999) (en banc).

dissent's view in *Ryan* that it would be an act of "judicial hubris" to narrow the statute by inserting language that the drafters of the statute did not use.[43]

The fact is, if additional language is required to achieve a desired construction, this means the statute is not "readily susceptible" to that construction. Rather, in conducting a true "narrowing construction," a court should continue to focus solely on the plain language of the statute and then determine whether that language alone is susceptible to a narrowing construction. This conclusion would harmonize *Boykin* with the Supreme Court's First Amendment precedent, rather than putting the two at odds.

Finally there are problems with "saving" statutes by rewriting them. The Supreme Court explained in *Reese* that "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government."[44] In addition, judicial rewriting of statutes would severely diminish the Legislature's "incentive to draft a narrowly tailored law in the first place."[45]

In his book *The Supreme Court in the American System of Government*, Justice Jackson said that "[e]very Justice has been accused of legislating and every one has joined in that accusation of others."[46] My brief research certainly supports this comment. The citations in this opinion range from Clinton and Stevens to Posner and Holmes. Judges across the spectrum have accused others of engaging in judicial legislation. We should do more than pay lip service to the notion that courts should use restraint in statutory construction. We should heed Jackson's cautionary words: "When the Court has gone too far, it has provoked reactions which have set back the cause it is designed to advance and has sometimes called down upon itself severe rebuke."[47]

## V.

Contrary to what we said in *Morehead*, § 42.05 is not at all "readily subject to a narrowing construction." At that time, as well as now, the statute provided that "[a] person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance." There is nothing about this language that even remotely purports to limit its application to "physical acts or verbal utterances that substantially impair the ordinary conduct of lawful meetings and thereby curtail the exercise of others' First Amendment rights." The *Morehead* Court created this language from whole cloth, "perform[ing] a remarkable job of plastic surgery upon the face of the" statute.[48] This is not what is meant by the

---

**43.** *Id.*, quoting *Ryan*, 195 F.3d at 866 (Posner, C.J., dissenting).

**44.** *Reese*, 92 U.S. at 221; *see also Reno v. A.C.L.U.*, 521 U.S. at 884 n. 49, 117 S.Ct. 2329.

**45.** *Osborne v. Ohio*, 495 U.S. 103, 121, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); *Reno v. A.C.L.U.*, 521 U.S. at 885 n. 50, 117 S.Ct. 2329.

**46.** Robert H. Jackson, The Supreme Court in the American System of Government 79–80 (1955).

**47.** *Id.*

**48.** *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

phrase "readily subject to a narrowing construction."

## VI.

I believe a statute is only "readily subject to a narrowing construction" if the language already in the statute can be construed in a narrow manner. Adding language to a statute is legislating from the bench. The *Morehead* Court erred by legislating and we should take this opportunity to correct that "judicial hubris." We should not ignore *Morehead's* error in "extending discredited reasoning" to a "previously unspoiled" statute. Instead, we should overrule *Morehead* and interpret § 42.05 purely as the Legislature wrote it. In doing so, we should find the statute unconstitutionally overbroad and vague. Because the majority concludes otherwise, I respectfully dissent.