Affirmed and Opinion filed July 17, 2007








Affirmed and Opinion filed July 17, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00971-CR

____________

 

OVIDE DUNCANTELL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 8

Harris County, Texas

Trial Court Cause No. 1240338

 



 

O P I N I O N

Appellant, Ovide Duncantell, appeals his conviction for the
misdemeanor offense of interference with the duties of a public servant.  See Tex. Penal Code Ann. ' 38.15(a)(1)
(Vernon 2003).  We affirm.

Factual and Procedural Background








Houston Police Officer R. C. Haney was the first witness to
testify.  According to Officer Haney, late in the evening of February 17, 2004,
he and his probationary officer partner, J. Wooley, were parked in their police
car in the parking lot of the Super Star Club located at the corner of Scott
and Stassen Streets.  Officer Wooley was completing paperwork for an unrelated
narcotics arrest made a short distance from the Super Star Club.  The narcotics
suspect was in the backseat of the police car.  While sitting in the front
passenger seat, Officer Haney observed a vehicle, which Officer Haney later
learned belonged to appellant, back into a parked Camaro.  When appellant=s vehicle failed
to stop and attempted to leave the parking lot, Officer Haney exited the police
car and attempted to stop the vehicle.  The driver of the vehicle initially
tried to drive around Officer Haney and only stopped when Officer Haney
positioned himself directly in the front of the vehicle.

Officer Haney initiated an investigation into the accident
and had the driver of appellant=s vehicle, who he eventually learned was
Barry Thompson, exit the vehicle.  Appellant, who was 68 at the time, was in
the front passenger seat.  As part of his investigation, as well as for his own
safety while he conducted the investigation, Officer Haney sought to control
the area around the two vehicles.[1] 
Thompson would not cooperate with Officer Haney, refusing to even provide his
name.  Officer Haney suspected Thompson was intoxicated so he initiated a DWI
investigation.   Thompson remained uncooperative and became increasingly
belligerent.  Ultimately, Officer Haney arrested Thompson and he was handcuffed
and placed in the back seat of the police car along with the narcotics suspect.








While Officer Haney tried to deal with Thompson and the
owner of the Camaro, appellant exited his vehicle and approached Officer Haney,
informing him he owned the  vehicle driven by Thompson.  Officer Haney told
appellant if Thompson was arrested, and appellant was the owner of the vehicle,
he would release the vehicle to appellant.  Officer Haney then informed
appellant he was in a crime scene, a DWI investigation, that he was a witness
to the accident, and was not free to go.  Officer Haney instructed appellant to
move to the other side of his vehicle and go back ten feet, and he would be
with him as soon as possible.  Appellant complied and moved to the other side
of his vehicle.

While attempting to question Thompson through the open back
door of the police car, Officer Haney observed appellant move to the back of
the police car.  While still quite upset, Thompson informed Officer Haney his
identification was in a briefcase in the back seat of appellant=s vehicle. 
Leaving Officer Wooley to try to calm down Thompson, Officer Haney went to
appellant=s vehicle and began looking through the briefcase in
the back seat for Thompson=s identification.  Sensing someone behind
him, Officer Haney turned around and was surprised to find himself standing
face to face with appellant.  Appellant, standing on Officer Haney=s gun side and no
more than a few inches away, shoved his identification in Officer Haney=s face.  Officer
Haney told appellant to step back.  Officer Haney then warned appellant not to
walk up behind a police officer like that and told him to go back by the patrol
car and to stay there until he was ready to speak with him.  At that point
appellant, who did not move away, became extremely agitated and aggressive, and
began cursing at Officer Haney.  Officer Haney again told appellant he was in a
crime scene and instructed appellant to move away until he was ready to talk to
him.  Appellant again refused and began berating and threatening Officer Haney
with consequences if he continued with his investigation.[2] 
Officer Haney stepped back several times to create distance between himself and
appellant, telling appellant to calm down and get back, but appellant advanced
each time to remain in close proximity to Officer Haney.








At this point, Officer Haney, who had decided appellant
would be arrested for interfering, called for back-up to assist with his three
suspects, two of whom were belligerent and potentially violent.  Officer Haney
then escorted appellant back to the rear of the patrol car.  Officer Wooley
stood with appellant until the back-up, Officer J. B. Sweatt, arrived. When
Officer Sweatt drove up, appellant left the back of the patrol car and hurried
toward Officer Sweatt=s vehicle.  After a loud exchange with
Officer Sweatt, appellant returned to the patrol car.  Officer Sweatt then
moved over to Officer Haney.  While Officer Haney briefed Officer Sweatt,
appellant again approached the scene, yelling vulgarities.  Officer Wooley
intercepted him and prevented appellant from moving further into the crime
scene. Finally, appellant attempted to leave the area, walking toward the
entrance to the Super Star Club.  Officer Sweatt pursued appellant, with
Officer Haney following.  After a brief struggle, in which appellant attempted
to grab Officer Sweatt=s genitals, appellant was handcuffed and
arrested.

According to Officer Haney, his accident and DWI investigations
were essentially shut down until he got the appellant in the backseat of a
police car in handcuffs.  Until then, because of appellant=s actions, Officer
Haney could not get the driver of appellant=s vehicle
identified, search the vehicle for identification or evidence, or conduct field
sobriety tests on Mr. Thompson.  Officer Haney testified that appellant=s actions that
night interrupted, impeded, and disrupted his investigation.   In addition,
Officer Haney testified on the amount of time lost as a result of appellant=s conduct that
night.  According to Officer Haney, of the approximately forty-five minutes he
spent at the scene, thirty to forty minutes were devoted to dealing with
appellant.








Officer Haney also testified regarding the extent of the
crime scene that evening in the Super Star Club parking lot.  Initially, the
crime scene encompassed the two vehicles involved in the accident as well as
the area where Officer Haney  was standing interviewing Mr. Thompson.  Once he
arrested Mr. Thompson and placed him in the back of the police car, Officer Haney
testified the crime scene expanded to include the police car.  According to
Officer Haney, appellant was the only civilian, other than those brought in by
the officers, who entered the crime scene area.  Finally, Officer Haney
testified that appellant entered the crime scene area more than once and was
told more than once to leave the crime scene area.

The next witness to testify was Don Seward.  Mr. Seward
testified he was inside the Super Star Club talking to the lady who owned the
Camaro hit by appellant=s vehicle and she asked him to accompany
her outside when the police came into the club to find her.  Mr. Seward then
remained outside and was able to observe appellant=s conduct.  Mr.
Seward testified that a police officer told appellant to stay in a specified
area because they were conducting an investigation.  Mr. Seward also testified
that appellant kept moving and would not do what the officer asked him to do
even though the officer asked him to stay out of the area three, four, or even
five times.  

 Officer Sweatt also testified during appellant=s trial.  Officer
Sweatt testified that, around midnight of February 17, 2004, Officer Haney
requested that he come to the Super Star Club.  As Officer Sweatt pulled into
the parking lot, appellant rushed to his vehicle and he had to hurriedly exit. 
When Officer Sweatt placed his hand on appellant=s chest to
maintain space between them and told appellant to step back over to the patrol
car, appellant became very agitated, but reluctantly did what he was told. 
Officer Sweatt then testified that he moved over to Officer Haney to be briefed
on the situation and as they talked, appellant moved toward them two or three
times, forcing Officer Haney to stop his investigation and focus on appellant. 
According to Officer Sweatt, although the crime scene was not roped off as
would be the case for a murder investigation, it was adjacent to the two
vehicles involved in the accident.  Officer Sweatt also testified that
appellant was told by both Officer Haney and himself, at different times, to
stay at the back of the patrol car.








Appellant called Officer Wooley to testify.  Officer Wooley
testified that he remained in the police car to complete the paperwork related
to the narcotics arrest while Officer Haney conducted the accident
investigation.  Officer Wooley testified he exited the police car when he heard
Mr. Thompson, the driver of appellant=s vehicle, become
loud and belligerent.  After Mr. Thompson was placed in the back of the patrol
car with the narcotics suspect, Officer Wooley testified he moved over to appellant=s car where
Officer Haney was leaning into the car and appellant was standing right behind
him.  When  Officer Haney saw appellant and told him to return to where he had
been standing, stay out of the crime scene, and permit the officers to continue
their investigation, appellant initially refused and responded with abusive
language.  Officer Wooley eventually escorted appellant back to the rear of the
patrol car.  Officer Wooley testified that appellant attempted to walk back
toward Officers Haney and Sweatt several times but he prevented him from doing
so.

Finally, appellant testified in his own defense.  Appellant
testified Mr. Thompson drove him to the Super Star Club the evening of February
17, 2004 because he was unable to drive at night.  Appellant testified that
following the accident two police officers approached his car.  Appellant
further testified he remained inside his car for approximately five to fifteen
minutes following the accident.   According to appellant, he only exited his
car to look for Mr. Thompson=s driver=s license in the
back seat.  At that point, a police officer came running up and yelled for
appellant to move away from the car, which he immediately did.  Appellant
admitted he approached the officer questioning Mr. Thompson in an effort to
tell the officer about his need to go home.  In addition, appellant admitted he
became excited when he saw Mr. Thompson handcuffed and placed under arrest
because he could not drive himself home.  Appellant also admitted he followed
the officers to tell them to remove Mr. Thompson=s handcuffs. 
Finally, appellant admitted he disregarded the officers= repeated orders
to stand back and described two occasions when he approached the investigating
officers and was told to get back.








The jury found appellant guilty of interference with the duties
of a public servant. The trial court sentenced appellant to sixteen days in
jail with credit for four days already served.  This appeal followed.

Discussion

In his first two issues on appeal, appellant argues section
38.15 of the Texas Penal Code (Athe interference statute@) is
unconstitutionally overbroad and vague.  In his third issue, appellant
challenges the factual sufficiency of the evidence supporting his conviction. 
As it impacts our discussion of appellant=s constitutional
issues, we address his third issue, challenging the factual sufficiency of the
evidence, first.

A.      Is the
Evidence Factually Sufficient to Support Appellant=s Convictions?

In his third issue, appellant argues the evidence is
factually insufficient to support the jury=s guilty verdict.[3] 
Specifically, appellant contends the evidence is factually insufficient to
prove beyond a reasonable doubt that he interrupted, disrupted, impeded, and
interfered with Officer Haney by repeatedly entering a crime scene area,
because the crime scene area was not defined to appellant at the time of the
offense and Officer Haney=s testimony was inconsistent or contradictory
regarding the extent of the crime scene.  In addition, appellant contends that
since he was not impeached by any prior criminal history, and therefore he was
as credible as any other witness, his testimony alone should have won him an
acquittal.

1.       The
Standard of Review








In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.  First,
when considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  Our evaluation should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain
v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  In addition, the
jury may believe or disbelieve all or part of any witness=s testimony. Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  Reconciliation of
any conflicts in the evidence falls within the exclusive province of the jury. Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).   Finally, our analysis must consider
the evidence appellant claims is most important in allegedly undermining the
jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

2.       The
Evidence is Factually Sufficient

In this case appellant was charged with interfering with
the duties of a public servant. Tex.
Penal Code Ann. ' 38.15(a)(1).  A person commits the
offense of interference with the duties of a public servant if that person (1)
while acting with criminal negligence; (2) interrupts, disrupts, impedes, or
otherwise interferes with a peace officer; (3) while the peace officer is
performing a duty or exercising authority imposed or granted by law.  Id. 
Criminal negligence is defined in the Texas Penal Code as conduct committed by
a person

when he ought to be aware of a substantial and unjustifiable risk that
the circumstances exist or the result will occur.  The risk must be of such a
nature and degree that the failure to perceive it constitutes a gross deviation
from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s standpoint.

Tex. Penal Code Ann. ' 6.03(d).








Initially, we address appellant=s contention that
his testimony alone should have brought him an acquittal since he was not
impeached by any criminal history.  Appellant=s contention
contravenes the well-established standard of review for a jury=s evaluation of
the credibility of witnesses.  The jury is the exclusive judge of the credibility of the witnesses and
the weight to be given their testimony.  Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000).  Our evaluation of the sufficiency of the evidence should
not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain,
958 S.W.2d at 408B09.  Appellant=s argument his testimony alone was
sufficient to warrant an acquittal is without merit.

Likewise, appellant=s argument the
evidence is insufficient because the crime scene was never defined to him is
without merit.  Here, the jury heard Officer Haney=s testimony that
he informed appellant numerous times he was conducting an investigation and
that appellant was intruding into the area of that investigation.  Officer
Haney also testified he initially ordered appellant to move ten feet back from
appellant=s car and wait there until he was ready to talk to
him.  Later, Officer Haney testified he instructed appellant to remain behind
his patrol car.  In addition, Officer Wooley testified regarding his efforts to
keep appellant out of the crime scene.  Officer Sweatt also testified that he
instructed appellant, on multiple occasions, to stay by Officer Haney=s patrol car.  Mr.
Seward testified that appellant was told by a police officer to stay in a
specified area because they were conducting an investigation.  Mr. Seward also
testified that appellant kept moving and would not do what the officer asked
him to do even though the officer asked him to stay out of the area multiple
times.  Finally, appellant admitted disregarding the officers= repeated orders
to stand back and described two occasions when he approached the investigating
officers and was told to get back.  Regardless of how the precise area of the
investigation was defined, the evidence was sufficient for a jury to conclude
that, beyond a reasonable doubt, appellant knew or should have known that, by
repeatedly leaving the area where he was told to wait by several police
officers, there was a substantial and unjustifiable risk that he was entering a
prohibited area.








Finally, appellant=s contention that
Officer Haney=s testimony, describing the extent of the crime scene,
weighs against the sufficiency of the evidence, is without merit.  Officer
Haney testified the crime scene did not include the entire Super Star Club
parking lot, but initially encompassed only the area around the two vehicles
involved in the collision.  Officer Haney explained that once Mr. Thompson was
arrested and placed in the back seat of the patrol car, the crime scene
expanded to include the patrol car.  The jury is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony.  Johnson, 23
S.W.3d at 7.  The jury is
free to believe any or all of the testimony of the State=s witnesses.  Cole v. State, 194 S.W.3d 538,
551 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d).  The jury=s decision is not manifestly unjust
merely because the jury resolved conflicting views of the evidence in favor of
the State.  Cain, 958 S.W.2d at 410.  The jury heard Officer Haney=s testimony,
considered the inconsistencies, if any, and still determined that appellant was
guilty of interference with the duties of a public servant.

After
neutrally examining all the evidence, we hold that the proof of guilt was not
so obviously weak as to undermine confidence in the jury=s determination; nor was the contrary
evidence so strong that the beyond-a-reasonable-doubt standard could not have
been met.  The evidence is factually sufficient to support appellant=s conviction.  Accordingly, we
overrule appellant=s third issue.

B.        Is Penal Code Section 38.15
Unconstitutionally Overbroad and Vague?

In his
first issue, appellant asserts section 38.15 of the Texas Penal Code is
unconstitutionally vague on its face because it violates his due process rights
under the First and Fourteenth Amendments to the United States Constitution as
it fails to provide adequate notice of the prohibited conduct.  In his second
issue, appellant argues the interference with the duties of a public servant
statute is unconstitutionally overbroad on its face as it interferes with
rights protected by the First Amendment to the United States Constitution. 
Because these two issues are closely related, we address them together.








1.       The
Standard of Review

In construing whether a law is unconstitutionally vague
and/or overbroad, we keep in mind the elementary principle of statutory
construction: we interpret a statute in accordance with the plain meaning of
its language unless the language is ambiguous or the plain meaning leads to an
absurd result.  Sanchez v. State, 995 S.W.2d 677, 683 (Tex. Crim. App.
1999).  In determining a statute=s plain meaning, A[w]ords and
phrases shall be read in context and construed according to the rules of
grammar and usage.@  Id. (quoting Tex. Gov=t Code Ann. ' 311.011(a)
(Vernon 2005)); see Tex. Penal
Code Ann. ' 1.05(b) (making section 311.011
applicable to the Texas Penal Code).  We begin our review of the
constitutionality of a statute with the presumption that the statute is valid
and assume the legislature did not act arbitrarily and unreasonably in enacting
the statute.  Rodriguez v. State, 93 S.W.3d 60, 69 (Tex. Crim. App.
2002).   Therefore, if a statute can be construed in two different ways, one of
which sustains its validity, we apply the interpretation that sustains its
validity.  State v. Carmaco, 203 S.W.3d 596, 599 (Tex. App.CHouston [14th Dist.]
2006, no pet.).  The burden rests upon the person who challenges the statute to
establish its unconstitutionality.  Rodriguez, 93 S.W.3d at 69.  We must
uphold the statute if we can determine a reasonable construction which will
render it constitutional.  Ely v. State, 582 S.W.2d 416, 419 (Tex. Crim.
App. [Panel Op.] 1979).  When an appellant challenges a statute as both
unconstitutionally overbroad and vague, we address the overbreadth challenge
first.  Byrum v. State, 762 S.W.2d 685, 687 (Tex. App.CHouston [14th
Dist.] 1988, no pet.).

2.       Section
38.15 is Not Unconstitutionally Overbroad








A statute is impermissibly overbroad if, in addition to
proscribing activities that may be constitutionally prohibited, it sweeps
within its coverage speech or conduct protected by  the First Amendment.  Bynum
v. State, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989); see also Village
of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494,
102 S.Ct. 1186, 1191, 71 l.Ed.2d 362 (1982) (when there is a facial challenge
to the overbreadth and vagueness of a law, the court=s first task is to
determine whether the enactment reaches a substantial amount of
constitutionally protected conduct).  A statute will not be invalidated for
overbreadth merely because it is possible to imagine some unconstitutional
applications; therefore, we will not strike down a statute for overbreadth
unless there is a realistic danger that the statute itself will significantly
compromise recognized First Amendment protections of parties not before the
Court.  See Members of City Council of City of Los Angeles v. Taxpayers for
Vincent, 466 U.S. 789, 800B01, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772
(1984) (A[T]he mere fact
that one can conceive of some impermissible applications of a statute is not
sufficient to render it susceptible to an overbreadth challenge.  On the
contrary, the requirement of substantial overbreadth stems from the underlying
justification for the overbreadth exception itselfBthe interest in
preventing an invalid statute from inhibiting the speech of third parties who
are not before the court.@).   Therefore, our first task is to
determine whether the interference statute reaches a substantial amount of
constitutionally protected conduct.  Village of Hoffman Estates, 455
U.S. at 494, 102 S.Ct. at 1191.  If it does not, the overbreadth challenge must
fail.  Id.

Appellant asserts the interference statute is overbroad
because it impermissibly restricts a person=s right to walk
about freely and the right to not remain silent.  The interference statute
provides that it is a defense to prosecution under the statute if the
interruption, disruption, impediment, or interference alleged consists of
speech only.  Tex. Penal Code Ann.
' 38.15(d). 
Therefore, we must only examine the interference statute=s limitations on
conduct to determine if it restricts a substantial amount of constitutionally
protected conduct.








Although the First Amendment protects speech and other
forms of expressive conduct, not all forms of body movement constitute expressive
conduct.  See City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S.Ct.
1591, 1595, 104 L.Ed.2d 18 (1989) (AIt is possible to
find some kernel of expression in almost every activity a person undertakes B for example,
walking down the street or meeting one=s friends at a
shopping mall B but such a kernel is not sufficient to bring the
activity within the protection of the First Amendment.@)  The
interference statute at issue here prohibits a person, acting with criminal
negligence, from interrupting, disrupting, impeding, or otherwise interfering
with a peace officer, while the peace officer is performing a duty or
exercising authority imposed or granted by law. Tex. Penal Code Ann. ' 38.15(a)(1). 
Appellant has cited no authority, and we are aware of none, holding that
conduct, which a person knew or should have known would interrupt, disrupt,
impede, or interfere with a peace officer performing a duty imposed by law,
such as investigating an accident or arresting a criminal suspect, is
expressive conduct protected by the First Amendment.  Accordingly, we hold that
conduct which interrupts, disrupts, impedes, or interferes with a peace officer
performing a duty imposed by law is not expressive conduct protected by the
First Amendment.  See Puckett v. State, 801 S.W.2d 188, 192 (Tex. App.CHouston [14th
Dist.] 1990, pet. ref.) (AThe State of Texas undoubtedly has a valid
and substantial interest in protecting the integrity of its judicial system and
in allowing public servants, witnesses and prospective witnesses to perform
their respective duties without interference from threats of physical violence.@).  As the
interference statute does not restrict a substantial amount of constitutionally
protected conduct, it is not unconstitutionally overbroad.  We overrule
appellant=s second issue.

3.       Section
38.15 is Not Unconstitutionally Vague

In his first issue appellant argues the interference
statute is unconstitutionally vague because it fails to provide adequate notice
of the prohibited conduct since it does not define what constitutes a Acrime scene
investigation area,@ or the meaning of interrupts, disrupts,
impedes, or interferes.  Appellant also asserts the statute is
unconstitutionally vague since it gives police officers unfettered discretion
to apply the statute to any person who simply annoys them.








A vagueness challenge is applicable to all criminal laws,
not just those that regulate speech.  Webb v. State, 991 S.W.2d 408, 416
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d). A statute will
be declared unconstitutionally vague if Aits prohibitions
are not clearly defined.@  State v. Markovich, 77 S.W.3d
274, 279 (Tex. Crim. App. 2002) (quoting Grayned v. City of Rockford,
408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)).  However, the
vagueness doctrine is not designed to convert into a constitutional dilemma the
practical difficulties in drawing criminal statutes general enough to take into
account a variety of human conduct and sufficiently specific to provide fair
warning that certain kinds of conduct are prohibited.  Webb, 991 S.W.2d
at 416.  A reviewing court must make a two-part inquiry in the examination of a
criminal statute for vagueness.  The first inquiry is whether an ordinary,
law-abiding person receives sufficient information from the statute that his
conduct risks violating the criminal law.  State v. Fry, 867 S.W.2d 398,
401 (Tex. App.CHouston [14th Dist.] 1993, no pet.).  All penal laws
must give notice to the populace about what activity is made criminal to
provide fair notice to persons before making their activity criminal.  Id.
(citing Bynum, 767 S.W.2d at 773).  A criminal statute need not be
mathematically precise; it need only give fair warning, in light of common
understanding and practices.  Id. (citing Grayned, 408 U.S. at
110, 92 S.Ct. at 2300).  A statute is unconstitutionally vague only when no
core of prohibited activity is defined.  Id. (citing Briggs, 740
S.W.2d at 806).

The second inquiry involves a determination of whether the
statute provides sufficient notice to law enforcement personnel to prevent
arbitrary or discriminatory enforcement.  Id. (citing Bynum, 767
S.W.2d at 773).  A statute must be sufficiently definite to avoid the
possibility of arbitrary and erratic arrests and convictions.  Fry, 867
S.W.2d at 401 (citing Papachristou v. City of Jacksonville, 405
U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)).  Either of these
inquiries forms an independent basis for a finding of vagueness.  Id. (citing
Adley v. State, 718 S.W.2d 682, 685 (Tex. Crim. App. 1985)).








When a statute, such as the interference statute at issue
here, implicates no constitutionally protected conduct, a reviewing court
should sustain the vagueness challenge only if the statute is impermissibly
vague in all its applications.  Bynum, 767 S.W.2d at 774.  A person who
engages in conduct that is clearly proscribed cannot complain of the vagueness
of the law as applied to the conduct of others.  Id. (citing Village
of Hoffman Estates, 455 U.S. at 494, 102 S.Ct. at  1191).  As our
discussion of the sufficiency of the evidence indicates, appellant violated the
interference statute and therefore, we will sustain his facial vagueness
challenge only if the statute is impermissibly vague as applied to his conduct
at issue here.[4] 
Id. 








Appellant argues the interference statute is vague as
applied to his conduct because it does not provide adequate notice of the
prohibited conduct since it does not define key terms and because it gives
police officers unfettered discretion to apply the statute to any person who
annoys them.  However, a statute is not unconstitutionally vague merely because
it fails to define the words or terms used.  Fry, 867 S.W.2d at 401. 
When words are not defined, they are ordinarily given their plain meaning,
unless the statute clearly shows that they were used in some other sense.  Id.
at 402.  In the absence of special definitions, statutory language under
attack as vague can be measured by common understanding and practices or
construed in the sense generally understood.  Id. (citing Ely v.
State, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979)).  The terms interrupt,
disrupt, impede, and interfere are all terms easily understood by persons of
common intelligence.  See Webb, 991 S.W.2d at 416 (holding the
contested statutory language is not unconstitutionally vague as it conveys a
sufficient warning to appellant about the proscribed conduct when measured by
common understanding and practice).  The terms of the interference statute give
a person of ordinary intelligence fair notice of the prohibited conduct: a
person cannot, by actions other than speech only, affect a peace officer=s performance of a
legal duty or exercise of legal authority to the extent it essentially shuts
down that peace officer=s performance of that duty or authority. 
Likewise, the interference statute adequately details the prohibited conduct to
the extent that the enforcement of the statute is not relegated to the
subjective interpretation of the police officers on the scene.  Bynum,
767 S.W.2d at 775.  The language of the statute provides adequate guidance to
law enforcement authorities to such a degree that the risk of improperly
motivated selective enforcement is obviated.  Id.

As the interference statute is not unconstitutionally vague
as applied to appellant=s conduct at issue in this appeal, we
overrule appellant=s first issue.

Conclusion

Having overruled each of appellant=s issues on
appeal, we affirm the judgment of the trial court.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed July 17, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Publish C Tex. R. App. P. 47.2(b).









[1]  During the trial, Officer Haney testified on the
reasons he wanted the area around his investigation to be tightly controlled.
These reasons included his own physical safety as he had not had an opportunity
to search the vehicle or suspect for weapons.  In addition, the vehicle might
contain evidence, such as open containers or narcotics, and Officer Haney did
not want anyone entering the vehicle and possibly removing that evidence.





[2]  Appellant told Officer Haney the vehicle was his,
that Officer Haney was making a big mistake, that the scene was his (appellant=s), that he (appellant) was in control, that Officer
Haney did not know who he (appellant) was, that he (appellant) was a former city
councilman and he had an open door policy with the police chief.





[3]  As a factual sufficiency review begins with the
presumption that the evidence supporting the jury=s verdict is legally sufficient, and since appellant challenges only
the factual sufficiency of the evidence, he effectively concedes that the
evidence is legally sufficient to sustain the conviction. See Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).





[4]  Some cases analyzing the facial vagueness of a
statute, treat this test, whether a statue is vague as applied to a defendant=s conduct, as the first step in the examination of a
facial vagueness challenge.  See Byrum v. State, 762 S.W.2d 685, 688
(Tex. App.CHouston [14th Dist.] 1988, no pet.) (holding that
since the statute at issue was not unconstitutionally vague as applied to the
defendant=s conduct, the appellate court did not need to address
the defendant=s facial vagueness challenge); see also Sullivan v.
State, 986 S.W.2d 708, 713B14 (Tex. App.CDallas 1999, no pet.) (holding that consideration of
the vagueness of the statute as applied to the defendant=s conduct was only the first stage of a two-part
facial vagueness challenge required by Village of Hoffman Estates v.
Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d
362 (1982)).  Because we find the interference statute is not vague as applied
to appellant=s conduct, we need not address this issue.