Quenton Maurice WOODSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–05–00203–CR.

Court of Appeals of Texas, Waco.

March 8, 2006.

Discretionary Review Refused June 21, 2006.

Joseph L. Sheppard, Burleson, for appellant.

Dale S. Hanna, Johnson County Dist. Atty., Cleburne, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

1. Woodson also contends that section 42.072 is "overbroad" in the statement of his second point. However, virtually the entirety of the discussion in his brief regarding the second point is devoted to the issue of vagueness, and

## OPINION

FELIPE REYNA, Justice.

Quenton Maurice Woodson appeals the revocation of his community supervision for stalking. Woodson contends in three points that the court abused its discretion by revoking his community supervision because: (1) there is insufficient evidence to establish a violation of the terms and conditions of community supervision; (2) the stalking statute is unconstitutionally vague on its face; and (3) GPS tracking records and supporting testimony regarding his whereabouts did not meet the *Kelly* standard for the admission of scientific evidence. We will affirm.

### Constitutionality of Section 42.072

■ Woodson contends in his second point that section 42.072 of the Penal Code is unconstitutionally vague [1] on its face.

Section 42.072 provides in pertinent part:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household; or

Woodson presents no argument or authority on the issue of overbreadth. Accordingly, we address only the argument that the statute is unconstitutionally vague.

(C) that an offense will be committed against the other person's property;

(2) causes the other person or a member of the other person's family or household to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

(A) bodily injury or death for himself or herself;

(B) bodily injury or death for a member of the person's family or household; or

(C) that an offense will be committed against the person's property.

TEX. PEN.CODE ANN. § 42.072(a) (Vernon 2003).

Woodson specifically contends that the phrases "pursuant to the same scheme or course of conduct" and "reasonable person" are too vague and indefinite to be enforceable. He also contends that the statute is unconstitutionally vague because it contains no "temporal requirement" with regard to the element of the offense that the actor commit the threatening conduct "on more than one occasion."

■ A facial challenge to the constitutionality of a statute may be raised for the first time on appeal. *See Ex parte Flores*, 130 S.W.3d 100, 106 (Tex.App.-El Paso 2003, pet. ref'd); *Rodriguez v. State*, 71 S.W.3d 800, 802 (Tex.App.-Texarkana 2002, no pet.); *Bryant v. State*, 47 S.W.3d 80, 84 (Tex.App.-Waco 2001, pet. ref'd); *see also Garcia v. State*, 887 S.W.2d 846, 861 (Tex.Crim.App.1994) (because appellant did not challenge statute as "facially unconstitutional," appellant had to object

at trial to preserve issue for appellate review).

■ A statute is unconstitutionally vague if it fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" or "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *accord State v. Markovich*, 77 S.W.3d 274, 279 (Tex.Crim.App. 2002); *Coggin v. State*, 123 S.W.3d 82, 87 (Tex.App.-Austin 2003, pet. ref'd).

The four Texas courts of appeals which have addressed this issue have all concluded that section 42.072 is not unconstitutionally vague. *See State v. Seibert*, 156 S.W.3d 32, 37 (Tex.App.-Dallas 2004, no pet.); *Lewis v. State*, 88 S.W.3d 383, 392 (Tex.App.-Fort Worth 2002, pet. ref'd); *Battles v. State*, 45 S.W.3d 694, 702–03 (Tex.App.-Tyler 2001, no pet.); *Clements v. State*, 19 S.W.3d 442, 449–51 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

The Tyler Court has specifically rejected the contention that the phrase "pursuant to the same scheme or course of conduct" is not unconstitutionally vague. *Battles*, 45 S.W.3d at 703. Two of the other three courts cited this decision with approval even though they did not refer to this particular phrase. *See Seibert*, 156 S.W.3d at 37; *Lewis*, 88 S.W.3d at 392. We agree with these courts.

A statute which incorporates a "reasonable person" standard will generally[2] be sufficient to pass constitutional muster. *See Long v. State*, 931 S.W.2d 285, 290 (Tex.Crim.App.1996); *Clements*, 19 S.W.3d at 450; *DeWillis v. State*, 951 S.W.2d 212, 215–17 (Tex.App.-Houston [14th Dist.]

**2.** However, a "reasonable person" standard may not save a statute which prohibits a broad range of conduct. *See Long v. State*,

931 S.W.2d 285, 290 n. 4 (Tex.Crim.App. 1996).

1997, no pet.). Thus, in *Long*, the Court of Criminal Appeals cited with approval several statutes which contain such a standard. 931 S.W.2d at 290 (citing, *e.g.*, Tex. Pen.Code Ann. § 22.041(a), (e) (Vernon Supp.2005),[3] § 33.11(a)(2)(B) (Vernon 2003)[4]).

Section 42.072(a)(3) prohibits a person from engaging in conduct that "would cause a reasonable person to fear" bodily injury or death to himself or another or an offense against his property. Tex. Pen. Code Ann. § 42.072(a)(3). Because the statute incorporates a "reasonable person" standard, we hold that it is not unconstitutionally vague. *See Long*, 931 S.W.2d at 290; *Clements*, 19 S.W.3d at 450; *DeWillis*, 951 S.W.2d at 215–17.

Woodson also contends that the statute is unconstitutionally vague because it contains no "temporal requirement" with regard to the element of the offense that the actor commit the threatening conduct "on more than one occasion." Thus, Woodson contends, "Conceivably a person could commit two assaults four years apart and, because of the lack of a temporal requirement in the statute, still be prosecuted for the stalking even though a requisite criminal act is barred from prosecution." We disagree.

Section 42.072 requires that these multiple incidences of threatening conduct be committed "pursuant to the same scheme or course of conduct." Tex. Pen.Code Ann. § 42.072(a). This is the pertinent temporal restriction. We have already concluded that this phrase is not unconstitutionally vague. Rather, the requirement that the defendant engage in more than one incidence of threatening conduct "pursuant to the same scheme or course of conduct" is "an element of the offense that must be charged in the indictment, submitted to the jury, and proven at trial." *See State v. Rogers*, 138 S.W.3d 524, 526 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (construing section 31.09 of the Penal Code).[5]

For the foregoing reasons, we overrule Woodson's second point.

### Evidentiary Sufficiency

█ Woodson contends in his first point that the court abused its discretion by revoking his community supervision because the evidence is legally and factually insufficient to prove that his leg monitor was functioning properly on the dates he allegedly violated the electronic monitoring condition of his community supervision.

---

3. Section 22.041(a) provides, "In this section, 'abandon' means to leave a child in any place without providing reasonable and necessary care for the child, under circumstances under which no *reasonable, similarly situated adult* would leave a child of that age and ability." Tex. Pen.Code Ann. § 22.041(a) (Vernon Supp. 2005) (emphasis added).

   Section 22.041(e) provides, "An offense under Subsection (b) is a felony of the second degree if the actor abandons the child under circumstances that *a reasonable person* would believe would place the child in imminent danger of death, bodily injury, or physical or mental impairment." *Id.* § 22.041(e) (Vernon Supp.2005) (emphasis added).

4. Section 31.11(a)(2)(B) provides that "[a] person commits an offense if the person ...

possesses, sells, or offers for sale tangible personal property and ... *a reasonable person* in the position of the actor would have known that the serial number or other permanent identification marking has been removed, altered, or obliterated." *Id.* § 31.11(a)(2)(B) (Vernon 2003) (emphasis added).

5. Section 31.09 provides:

   When amounts are obtained in violation of this chapter *pursuant to one scheme or continuing course of conduct,* whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.

   Tex. Pen.Code Ann. § 31.09 (Vernon 2003) (emphasis added).

We construe Woodson's first point as an assertion that the State failed to prove by a preponderance of the evidence that he violated this condition of his community supervision. *See Moreno v. State,* 22 S.W.3d 482, 488 (Tex.Crim.App.1999); *Brooks v. State,* 153 S.W.3d 124, 126 (Tex. App.-Beaumont 2004, no pet.).

The condition of community supervision at issue required a "GPS tracking leg monitor, with a 6:00 A.M. to 10:00 P.M. schedule." This is the only condition which the State alleged Woodson to have violated.

Diantha Roberts installed Woodson's leg monitor on November 24, 2004. Roberts testified that she tried to install the leg monitor at the jail where Woodson was transported to be released on community supervision after sentencing. The installation involved attaching a leg monitor to Woodson's ankle which was not to be removed and attaching a waist unit to his belt which was to be removed only at night (from 10:00 p.m. to 6:00 a.m.) when it was to be plugged into a base to be recharged. However, Roberts was unable to finish installing the monitoring system at the jail because she could not establish a connection with the tracking satellite.[6]

Roberts drove Woodson to the community supervision office to complete installation. There she was able to establish the connection with the satellite and finish the installation. Roberts explained Woodson's responsibilities to him concerning the electronic monitoring equipment, namely that (1) he was to wear the leg monitor at all times, (2) he was to charge the waist unit from 10:00 p.m. to 6:00 a.m. each night, and (3) he was to wear the waist unit from 6:00 a.m. to 10:00 p.m. each day. Although

there was some initial confusion about how far Woodson could venture from the waist unit when it was charging at night, Woodson testified that he understood by December 10, 2004[7] that he was to go no farther than 300 feet from the unit when it was charging.

Woodson admitted to community supervision officer Bob Barnes that he had violated the electronic monitoring condition of his community supervision in at least two respects. First, Woodson admitted that he had left the waist unit in a friend's car on one occasion. And second, Woodson admitted that he had left the waist unit in his house when he went to a neighbor's house.

Woodson also conceded in cross-examination that he had violated the electronic monitoring condition of his community supervision.

Therefore, based on Woodson's own testimony and his admissions to Barnes, we cannot say that the court abused its discretion by revoking Woodson's community supervision. *See Cantu v. State,* 112 S.W.3d 270, 275 (Tex.App.-Corpus Christi 2003, no pet.); *Anthony v. State,* 962 S.W.2d 242, 246 (Tex.App.-Fort Worth 1998, no pet.). Accordingly, we overrule Woodson's first point.

Because the record contains sufficient evidence to support the court's decision to revoke Woodson's community supervision, we need not address Woodson's third point. *See* TEX.R.APP. P. 47.1. We affirm the judgment.

---

**6.** Roberts explained that there was too much concrete and steel in the jail walls to allow for a connection.

**7.** Woodson testified that there was some initial confusion about whether he could go 300

yards or 300 feet from the waist unit while it was charging. Nevertheless, he testified that Roberts and a community supervision officer made it clear to him on December 10 that he was to go no farther than 300 feet.