OPINION
 

 REX D. DAVIS, Justice.
 

 Melvin Childress was charged by indictment with two felony offenses: (1) dating violence assault (enhanced); and (2) aggravated assault. Childress was alleged to have poured gasoline on Tamala, his married girlfriend, and then threatened to light it with a lighter. A jury found him guilty on both charges and assessed prison sentences of ten and forty-five years, respectively, and a $10,000 fine on each. Asserting three issues, Childress appeals. We will affirm. .
 

 Factual Sufficiency
 

 We begin with Childress’s third issue, which alleges that the evidence is factually insufficient. In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder’s verdict clearly wrong and manifestly unjust.
 
 Watson v. State,
 
 204 S.W.3d 404, 414-15 (Tex.Crim.App.2006);
 
 Johnson v. State,
 
 23 S.W.3d 1, 11 (Tex.Crim.App.2000). “The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact.”
 
 Johnson,
 
 23 S.W.3d at 7. The appellate court “does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment....”
 
 Id.
 
 (quoting William Powers and Jack Ratliff,
 
 Another Look at “No Evidence” and “Insufficient Evidence,”
 
 69 Texas L.Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called “thirteenth juror” to review the factfinder’s weighing of the evidence and disagree with the factfinder’s determination.
 
 Watson,
 
 204 S.W.3d at 416-17.
 

 For the State to prove that Childress committed dating violence assault, it was required to prove that Childress intentionally, knowingly, or recklessly caused bodily injury to another person (by pouring gasoline on her) with whom he had a dating relationship. Tex. Pen.Code Ann. § 22.01(a)(1), (b)(2) (Vernon Supp.2008). The offense was enhanced to a third-degree felony by Childress’s stipulation to his prior conviction of an assault offense against a family or household member.
 
 Id.
 
 § 22.01(b)(2). For the State to prove that Childress committed aggravated assault, it was required to prove that Chil-dress intentionally or knowingly threatened another person with imminent bodily harm and exhibited a deadly weapon (gasoline and lighter) during the assault.
 
 Id.
 
 §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2008).
 

 Tamala testified that she and Childress met in August of 2005 and, despite Tama-la’s being married, they formed a dating and sexual relationship. Childress gave her attention when her marriage was struggling. They enjoyed each other’s company, did things together, and took out-of-town trips together. They talked about their problems together, and she stayed over at his house.
 

 On May 5, 2006, Tamala and several friends were at a restaurant having drinks. While at the restaurant, Childress called Tamala several times, and she lied to him, saying that she was still at work. On her way home, he called Tamala again, and she
 
 *547
 
 agreed to meet him at a convenience store around 11:00 p.m. When Tamala arrived, Childress was already there, standing next to his car with the trunk open. Tamala parked alongside him but did not get out of her car. Childress was angry and asked her where she had been, and she said she had been at a restaurant with coworkers. Tamala began to leave, and Childress asked her to wait and asked her again where she had been. Childress then got a container out of his trunk, poured its contents on Tamala through her open car window, and told her, “I’m going to set your bitch ass on fire.” The gasoline blurred and burned her eyes, but she could see that Childress was holding a lighter. She scrambled out of her car’s passenger side and ran into the store, with Childress following her.
 

 CHILDRESS v. STATE
 

 The store clerk said that Tamala was covering her eyes and crying hysterically as she entered the store; she smelled like gas. Childress came in and told the clerk that Tamala had poured gas on herself, but the clerk didn’t believe him; she had seen Childress outside with a bottle of liquid before the incident. A bystander was in the store, and he testified that Tamale smelled of gas, was frightened, and said that Childress had tried to light her on fire. The responding officers also said that Tamala smelled of gas and told them that Childress had poured gasoline on her.
 

 After the incident, Tamala said that Childress threatened to tell her husband about their affair if she did not sign an affidavit of nonprosecution. Tamala said she signed one because she wanted the whole situation to “go away.” She also continued her affair with Childress and eventually told her husband about him.
 

 Childress’s theory is that Tamala poured the gasoline on herself and that she made up the allegation against Childress, and that her lack of credibility causes the evidence to be factually insufficient.
 

 The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses’ testimony.
 
 Jaggers v. State,
 
 125 S.W.3d 661, 670 (Tex.App.-Houston [1st Dist.] 2003, pet. ref d) (citing
 
 Penagraph v. State,
 
 623 S.W.2d 341, 343 (Tex.Crim.App.1981)). The jury may believe all, some, or none of any witness’s testimony.
 
 Sharp v. State,
 
 707 S.W.2d 611, 614 (Tex.Crim.App.1986);
 
 Jaggers,
 
 125 S.W.3d at 670. As the reviewing court, we “should not substantially intrude upon the jury’s role as the sole judge of the weight and credibility of witness testimony.”
 
 Vasquesz v. State,
 
 67 S.W.3d 229, 236 (Tex.Crim.App.2002);
 
 see also Sharp,
 
 707 S.W.2d at 614;
 
 Jaggers,
 
 125 S.W.3d at 670.
 

 The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury’s conclusion based on matters beyond the scope of the appellate court’s legitimate concern.
 
 See
 
 GeoRge E. Dix & Robert O. Dawson, 42 Texas Practice — Criminal Practice and Procedure § 36.69 (Supp.1999). Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury’s determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.
 

 
 *550
 
 jeopardy purposes.
 
 Id.
 
 These factors are not exclusive, and the question ultimately is whether the legislature intended to allow the same conduct to be punished under both of the offenses,
 
 fíi.gon,
 
 252 S.W.3d at 371.
 

 It is apparent to us that the legislature intended these two offenses to be treated separately. While they are in the same chapter of the Penal Code, they are separate and distinct statutes, and they are not phrased in the alternative. They do not have common punishment ranges.
 
 [3]
 
 While they have a related focus — assaults—in this case there is no common focus between the two offenses. The dating violence assault focus is on the bodily injury of a victim in a dating relationship with the defendant, while the focus of aggravated assault in this case is the assaultive conduct in the form of threatening imminent bodily injury with a deadly weapon. The threat of harm was being set on fire, while the harm actually suffered was bodily injury to Tamala’s eyes and face from the gasoline.
 

 The differing elements between dating violence assault and aggravated assault, as charged, cannot be considered the same under an imputed theory of liability. Dating violence assault, with its bodily injury element (which conceptually would be no different had Childress hit Tamala in the face), is not similar to an imminent threat of bodily injury with a deadly weapon. Finally, neither Childress nor the State has provided us with any legislative history that might indicate whether or not the legislature intended to treat the offenses as the same or different for double-jeopardy purposes.
 

 After reviewing the
 
 Ervin
 
 factors, we determine that the offenses as charged are not the same in the context of multiple punishments. Accordingly, no double-jeopardy violation occurred.
 
 [4]
 
 We overrule Childress’s first issue.
 

 Facial Challenge to “Dating Relationship” as Vague
 

 We next address Childress’s claim in his second issue that the “dating relationship” statute that elevated the assault to a third-degree felony is facially unconstitutional because of its alleged vagueness and overbreadth.
 
 [5]
 
 A complaint that a statute is facially unconstitutional may be made for the first time on appeal.
 
 Woodson v. State,
 
 191 S.W.3d 280, 282 (Tex.App.-Waco 2006, pet. ref'd);
 
 Bryant v. State,
 
 47 S.W.3d 80, 84 (Tex.App.-Waco 2001, pet. ref'd).
 

 
 *551
 
 In
 
 Bryant,
 
 we articulated how we review such a vagueness claim:
 

 In its review of a challenged statute, the court will begin with a presumption of constitutionality. Thus, the burden to establish unconstitutionality falls upon the challenger.
 
 Ex parte Granviel,
 
 561 S.W.2d 503, 511 (Tex.Crim.App.1978);
 
 Kaczmarek v. State,
 
 986 S.W.2d 287, 292 (Tex.App.-Waco, 1999[, no pet.]).
 

 There are two basic requirements for a constitutional vagueness challenge that does not involve a First Amendment right. First, the challenger must demonstrate that he has suffered some actual or threatened injury under the statute. In other words, the challenger must have standing to contest the statute.
 
 Texas Workers’ Compensation Comm’n v. Garcia,
 
 893 S.W.2d 504, 517-18 (Tex.1995). Then, the challenger must also show that the statute is imper-missibly vague in “all of its applications.”
 
 Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
 
 455 U.S. 489, 494-495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In
 
 Kaczmarek,
 
 this court set the standard for evaluating vagueness in a criminal statute. The statute must provide an ordinary, “law-abiding” individual with sufficient notice that his conduct is violative of criminal law.
 
 Kaczmarek,
 
 986 S.W.2d at 292. The statute must also provide explicit standards to law enforcement personnel to prevent arbitrary or discriminatory enforcement. To successfully show that the statute is unconstitutionally vague on its face, the challenge must establish that “no set of circumstances exists under which the statute will be valid.”
 
 Santikos v. State,
 
 836 S.W.2d 631, 633 (Tex.Crim.App.1992) (citing
 
 United States v. Salerno,
 
 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).
 

 Bryant,
 
 47 S.W.3d at 84-85 (footnote omitted).
 

 We find that Childress has standing; because of the “dating relationship” issue, his dating violence assault was elevated to a third-degree felony.
 
 See id.
 
 at 85. We thus turn to the vagueness complaint. We appear to be the first Texas appellate court to address such a complaint about the “dating relationship” statute, which provides in pertinent part:
 

 (b) For purposes of this title, “dating relationship” means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:
 

 (1) the length of the relationship;
 

 (2) the nature of the relationship; and
 

 (3) the frequency and type of interaction between the persons involved in the relationship.
 

 (c) A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a “dating relationship” under Subsection (b).
 

 Tex. Fam.Code Ann. § 71.0021(b, c) (Vernon 2008).
 
 [6]
 

 A statute is unconstitutionally vague if it fails to “give the person of ordinary intelligence a reasonable opportunity to know what is prohibited” or “provide explicit standards for those who apply them.”
 
 Grayned v. City of Rockford,
 
 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972);
 
 accord State v. Markovich,
 
 77 S.W.3d 274, 279 (Tex.Crim.App.2002);
 
 Coggin v. State,
 
 123 S.W.3d 82, 87 (Tex.App.-Austin 2003, pet. ref'd).
 

 Woodson,
 
 191 S.W.3d at 282.
 

 Childress’s argument is essentially that it “is possible that an ordinary person’s
 

 [3]
 

 . Family and dating violence assault, when enhanced by a prior conviction of the same offense, is a third-degree felony, and the punishment range is two to ten years. Tex Pen. Com; Ann. § 22.01(b);
 
 id.
 
 § 12.34(a) (Vernon 2003);
 
 id.
 
 § 12.42(a)(3) (Vernon Supp.2008). Aggravated assault is a second-degree felony (enhanced here to a first-degree felony because of a prior felony conviction), with a punishment range of two to twenty years.
 
 Id.
 
 § 22.02(b);
 
 id.
 
 § 12.33(a) (Vernon 2003);
 
 id.
 
 § 12.42(b).
 

 [4]
 

 . Because Childress has not briefed his collateral estoppel argument, he presents nothing for review and we will not address it.
 
 Strange v. Continental Cas. Co.,
 
 126 S.W.3d 676, 678 (Tex.App.-Dallas 2004, pet. denied);
 
 see
 
 Tex. R.App P. 38.1(h).
 

 [5]
 

 .Childress's second issue mentions the alleged overbreadth of the statute, but over-breadth is not briefed. Nor is it applicable, as Childress does not contend that the statute covers protected First Amendment freedoms.
 
 See Smith v. State,
 
 959 S.W.2d 1, 24 (Tex.App.-Waco 1997, pet. ref'd) (statute is imper-missibly overbroad when, "in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment”) (quoting
 
 Bynum v. State,
 
 767 S.W.2d 769, 772 (Tex.Crim.App.1989)).
 

 [6]
 

 . The court's charge contained these defini-lions.