

**IN THE**
**TENTH COURT OF APPEALS**

### No. 10-12-00215-CR

**CHRISTOPHER LEE PICKETT,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

**From the 278th District Court**
**Leon County, Texas**
**Trial Court No. CM-11-573**

## MEMORANDUM OPINION

Christopher Lee Pickett was convicted of aggravated assault with a deadly weapon against a person with whom he had a dating relationship and sentenced to 99 years in prison. TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(1) (West 2011). Pickett appealed. Because Pickett was not harmed by the trial court's failure to give him an additional 10 days to respond to the State's motion to amend the indictment and because the trial court did not err in admitting evidence over Pickett's objection, we affirm the trial court's judgment.

**BACKGROUND**

Pickett and Suzanne Marie Ferguson had an on and off volatile relationship since 2009. By September of 2011, Ferguson was so afraid of Pickett that she instructed her landlady to call the police if Pickett ever came by Ferguson's apartment and took Ferguson with him. On September 17, 2011, Ferguson was out walking to help in her recovery from a previous neck injury. Pickett pulled up next to her in his GMC Yukon SUV and asked if she wanted to ride to the store with him. Because she thought Pickett was "acting okay," Ferguson agreed. They did not go to the store, but drove around. She later asked to be taken home. She and Pickett argued and he progressively became more verbally abusive. He finally told her to get out and walk, keeping her shoes with him. She walked about 10 minutes before hearing Pickett's vehicle start up and get really loud. She saw his vehicle coming toward her and could see Pickett's face. Pickett then ran over her. He turned his SUV around and ran over her again. Pickett drove by three more times, yelling at Ferguson and then drove away. The next morning Ferguson was discovered by passersby. Ferguson survived, but suffered a crushed hip, broken femur, shattered pelvis, crushed spine from L5 down, and a crushed tailbone.

**ARTICLE 28.10**

In his first issue, Pickett contends that the trial court erred in refusing to allow Pickett 10 days to respond to the State's amended indictment, citing article 28.10(a) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (West

2006).  Subsection (a) provides in part:  "On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information."  *Id*.

On the day of trial, which was May 14, 2012, Pickett filed a motion to quash the State's amended indictment which had been both filed and approved by the trial court on April 24, 2012.  Pickett admitted that he knew of the State's motion to amend the indictment on April 24, 2012.  He alleged he did not know, until the week before trial, that the trial court had approved the amendment.  In argument before the trial court on his motion to quash, Pickett requested an additional 10 days to respond to the amended indictment per subsection (a).  Assuming without deciding that the trial court erred in failing to grant an additional 10 days to respond to the indictment, we examine Pickett's complaint for harm.[1]

Pickett contends that this type of error is subject to a constitutional harm analysis.  *See* TEX. R. APP. P. 44.2(a).  However, Pickett never argued to the trial court that his constitutional rights were violated by not receiving an additional 10 days to respond.  Further, "when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis, and that

---

[1] Pickett may have waived this complaint for review.  *See* TEX. R. APP. P. 33.1.  He knew about the State's motion to amend 20 days before trial and did nothing.  Instead, he waited until the day of trial to request the additional time.  Just as in the appellate court, the time to file any response to a motion begins when the motion is filed.  Generally, the Court is not required to request a response and may rule on the motion 10 days after it was filed.  TEX. R. APP. P. 10.3(a).  And if the appellate court rules prematurely, an appellant may ask for reconsideration.  *Id.* (b).

necessarily means the error cannot be deemed 'structural.'" *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005). Thus, we conduct a non-constitutional harm analysis, and any error, defect, irregularity, or variance that does not affect Pickett's substantial rights, *i.e.*, it did not seriously affect the verdict or render the trial fundamentally unfair, must be disregarded. *See* TEX. R. APP. P. 44.2(b); *Jacobson v. State*, 398 S.W.3d 195, 204 (Tex. Crim. App. 2013).

Pickett acknowledged that he had received the State's motion to amend, which appears in the record to have a copy of the proposed amended indictment with it, three weeks before trial. He admitted that he knew about the trial court's order the week before trial. The only change to the indictment was the addition of the word "serious" before the words "bodily injury." Proving serious bodily injury was necessary for a first degree felony offense involving family violence. TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(1) (West 2011). But it was not as if Pickett had no previous notice that he was being charged with aggravated assault with a deadly weapon involving family violence, a first degree felony. All of this information was included within the first indictment. And it was not as if Pickett would be surprised that Ferguson had sustained serious bodily injury when he ran over her with his vehicle. Thus, we find that any error in Pickett not receiving 10 days to respond to the State's motion to amend the indictment from the date he formally requested those 10 days, that being the start of the trial, did not affect Pickett's substantial rights, and he was not harmed.

Pickett's first issue is overruled.

**ADMISSION OF EVIDENCE**

In his second issue, Pickett argues that the trial court abused its discretion in admitting State's Exhibit 167, which included an order of deferred adjudication, conditions of community supervision, a guilty plea memorandum, a document evidencing a plea bargain agreement, and the trial court's certification of defendant's right of appeal regarding Pickett and a prior offense of aggravated assault/family violence against Ferguson. At trial, the State offered the exhibit to prove the dating relationship between Pickett and Ferguson. Pickett objected under Rules of Evidence 401, 403, 404(b) and 609. The trial court overruled Pickett's objections and immediately gave the jury a limiting instruction. On appeal, Pickett only argues that the evidence was irrelevant and even if it was relevant, its probative value was outweighed by the danger of unfair prejudice. TEX. R. EVID. 401; 403.

*Relevance*

Pickett contends that the exhibit was irrelevant because Pickett's and Ferguson's dating relationship had already been established and was never contested. In this case, the offense of aggravated assault is a first degree felony if "the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by" certain provisions in the Texas Family Code. TEX. PENAL CODE § 22.02(b)(1) (West 2011). The

only provision that applies to this case is the provision concerning a dating relationship. TEX. FAM. CODE ANN. § 71.0021 (West Supp. 2013). A dating relationship "means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. *Id*. (b). The existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship. *Id*.

Whether Pickett and Ferguson had a dating relationship is a fact of consequence. The exhibit shows that Pickett pled guilty to a similar offense involving family violence against Ferguson four months prior to the commission of this offense. Essentially, by this plea, Pickett admitted he had a dating relationship with Ferguson. Thus, this exhibit had the tendency to make the existence of a dating relationship more probable. *See* TEX. R. EVID. 401. Accordingly, the trial court did not abuse its discretion in admitting Exhibit 167 over Pickett's Rule 401 relevance objection.

*Rule 403*

But even relevant evidence may be excluded if, as Pickett argues on appeal, its probative value is substantially outweighed by the danger of unfair prejudice. *See id*. 403. In support of his argument, Pickett cites to one case, *Montgomery v. State*. *See Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991), *op'n on reh'g*.

There are several relevant criteria stated in that case by which we are to determine if relevant evidence should be excluded. Those are, (1) that the ultimate issue was not seriously contested by the opponent; (2) that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; (3) that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; and (4) that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. *Id*. at 392-393. When the record reveals one or more such relevant criteria reasonably contributing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, we should conclude that the trial court acted irrationally in failing to exclude it and thus abused its discretion. *Id*. at 393.

Pickett fails to mention any of the relevant criteria in his appellate brief. It appears, however, that Pickett attempts to address some of these criteria which are interspersed throughout his argument regarding this issue.

As to the first criterion, Pickett contends that the existence of a dating relationship was never contested. Although Pickett did not testify and presented no witnesses for his defense, it is of little or no consequence that he did not officially contest the existence of a dating relationship. Whether Pickett and Ferguson had a dating relationship was an element of the offense which the State was required to

prove. See TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(1) (West 2011); *Childress v. State*, 285 S.W.3d 544, 546 (Tex. App.—Waco 2009, pet. ref'd). Pickett pled not guilty to the offense which puts every element of the offense in issue; and a defendant's tactical decision to not contest an essential element does not remove the State's burden to prove that element. *See Old Chief v. U.S.*, 519 U.S. 172, 199-200, 117 S. Ct. 644, 659, 136 L. Ed. 2d 574 (1997); TEX. CODE CRIM. PROC. ANN. art. 27.17 (West 2006). Further, at the charge conference, Pickett would not stipulate that there was a dating relationship with Ferguson. Accordingly, this criterion does not reasonably contribute to a risk that the probative value of the tendered evidence was substantially outweighed by unfair prejudice.

As to the second criterion, Pickett states that the dating relationship had been clearly established by the State. The State had other evidence of the dating relationship. However, there was testimony that the relationship was off and on and that by the date of the offense, Ferguson was afraid of Pickett. Further, this particular exhibit was the only evidence of an admission by Pickett that he and Ferguson had a dating relationship. Accordingly, this criterion does not reasonably contribute to a risk that the probative value of the tendered evidence was substantially outweighed by unfair prejudice.

Pickett does not discuss the third criterion but addresses the fourth criterion stating that a limiting instruction does not always cure harm. This is an accurate

statement. However, we are to determine, based on the record, whether the introduction of Exhibit 167 was "of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious." *Montgomery*, 810 S.W.2d at 393.

The exhibit concerned a similar offense which occurred four months prior to the commission of the current offense. The jury had already heard about how Pickett, in the current offense, had run over Ferguson twice with his SUV and left her with severe injuries. And although the State went through the exhibit with a witness, the emphasis of the testimony was to show that Pickett's plea was voluntary.

Prior to any testimony about the exhibit, the trial court instructed the jury as follows.

> …it will be admitted for the limited purpose of showing the dating relationship, if any, that exists between these two parties. And I want to instruct the jury, ladies and gentlemen of the jury, you're instructed that evidence offered by the State of the defendant's plea of guilty and probated sentence for the offense of aggravated assault, dating violence, may be considered by you only in assisting you, if it does, in determining whether the defendant and Suzanne Marie Ferguson were engaged in a dating relationship at the time of the offense charged in the indictment in this case. You may not consider this evidence for purposes of determining whether or not the defendant is guilty of aggravated assault in this case or for any other purpose.

The trial court's charge to the jury included a very similar limiting instruction, and the State only referenced the exhibit in its final argument to show a dating relationship between Pickett and Ferguson.

After reviewing the record, we do not find that the introduction of Exhibit 167 was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious.

Having determined that none of the relevant criteria are present, we conclude that the trial court did not abuse its discretion in admitting Exhibit 167 over Pickett's Rule 403 objection. Pickett's second issue is overruled.

**CONCLUSION**

The trial court's judgment is affirmed.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed
Opinion delivered and filed December 27, 2013
Do not publish
[CRPM]