

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00359-CR

**CHARLES JOSHUA RAINES,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 19-03987-CRF-85

## MEMORANDUM OPINION

Charles Joshua Raines was convicted of the offense of Continuous Family Violence, *see* TEX. PENAL CODE § 25.11(a), and sentenced to 20 years in prison. Because the trial court did not err in denying Raines's motion to quash, Raines was not harmed by the introduction of hearsay evidence, and the trial court did not abuse its discretion in granting the State's motion for a finding of forfeiture by wrongdoing, the trial court's judgment is affirmed.

BACKGROUND

Amy had known Raines since she was 14 years old. They had a relationship for about four years and had two children together. Raines was abusive. The police were called many times. Amy's mom, Suzanne, also suffered from Raines's abuse. Amy, her children, and Suzanne, started living together, without Raines, sometime in 2015. This case centers on two assaults, one on Amy and one on Suzanne.

MOTION TO QUASH

In his first issue, Raines complains that the trial court erred in denying his motion to quash because the indictment for continuous family violence was barred by the statute of limitations. Specifically, he complains, as he did in the trial court, that two 2016 charging instruments did not toll the running of the limitations period for the indictment charging continuous family violence.

Raines was charged by information on January 12, 2016, for an assault against Suzanne occurring on or about December 7, 2015. On April 21, 2016, he was charged by indictment for violation of a condition of his bond by committing family violence against Amy by striking Amy with his hands or applying pressure to her neck or throat *and* for an assault against Amy, as a member of his family or household, by impeding her breath or circulation, both offenses occurring on or about February 8, 2016. Subsequently, on September 26, 2019, Raines was charged by indictment for continuous family violence, alleged to have occurred against Suzanne and Amy for offenses occurring on the same dates alleged in the prior 2016 information and indictment. The State further alleged that the prior 2016 information and indictment were pending when the offense for continuous

family violence was indicted.

### *Standard of Review*

When reviewing a trial court's ruling on a motion to quash an indictment, we apply a *de novo* standard of review. *See State v. Jarreau*, 512 S.W.3d 352, 354 (Tex. Crim. App. 2017); *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). This is because the trial court's decision on a motion to quash is based only on the indictment or charging instruments in question, the motion itself, and the argument of counsel; thus, the trial court is in no better position than we are to decide this issue. *See Moff*, 154 S.W.3d at 601.

### *Tolling Statute of Limitations*

The Code of Criminal Procedure requires an indictment to demonstrate, on its face, that the prosecution is not barred by the applicable statute of limitations. *State v. West*, 632 S.W.3d 908, 910 (Tex. Crim. App. 2021); *see* TEX. CODE CRIM. PROC. art. 21.02(6). However, the Code also provides that "[t]he time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation." TEX. CODE CRIM. PROC. art. 12.05(b); *West*, 632 S.W.3d at 910-11.

In *Hernandez v. State*, the Court of Criminal Appeals determined that not just *any* indictment would toll the statute of limitations. *Hernandez v. State*, 127 S.W.3d 768, 772 (Tex. Crim. App. 2004). Rather, the Court held that "to fulfill the legislature's purpose in enacting Article 12.05(b), a prior indictment tolls the statute of limitations under Article 12.05(b) for a subsequent indictment when both indictments allege the same *conduct*, same *act*, or same *transaction*." *Id*. at 774. (Emphasis added). "'A subsequent indictment

is barred by the statute of limitations if it broadens or substantially amends the charges in the original indictment.'" *State v. West*, 632 S.W.3d 908, 911 (Tex. Crim. App. 2021) (quoting *Hernandez*, 127 S.W.3d at 773).

A factor that led the Court of Criminal Appeals to this determination is the fundamental requirement that an indictment must give a defendant adequate notice to prepare a defense. *Id.* In order for a prior indictment to provide sufficient notice, such that the defendant could preserve facts necessary to defending against the subsequent indictment, the two indictments must involve the *same event.* *Id.* at 912; *Hernandez*, 127 S.W.3d at 774. The word, "same," is given its common and ordinary meaning. *West*, 632 S.W.3d at 912. Thus, in determining whether the same conduct, same act, or same transaction is alleged in both indictments, those alleged conducts, acts, or transactions must be "one and the same event." *Id.* at 913. Further, to answer this "sameness" question, we focus on whether the defensive strategy to the prior indictment's allegations would have necessarily translated into defenses to the subsequent indictment's allegations. *Id.* at 915.

### Suzanne's Charge

Initially, Raines questions whether the prior charge for assault bodily injury by striking Suzanne is the "same" for purposes of limitations as the subsequent charge for assault bodily injury by striking Suzanne who is a member of Raines's family or household or a person with whom Raines has or has had a dating relationship. Raines contends that the original information simply charged Raines with bodily injury assault while the subsequent indictment added language that Suzanne was a member of Raines's

family or household or had a dating relationship with Raines. Raines asserts he had no notice that he was to prepare a defense that he and Suzanne had a substantial personal relationship.

According to the Court of Criminal Appeals, it is the conduct, the act, the transaction—in essence, the event—that is required to be the same between the original and subsequent indictments. *See State v. West*, 632 S.W.3d 908, 912 (Tex. Crim. App. 2021); *Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004). We have held, in the context of the constitutionality of Texas Family Code section 71.0021, the Dating Violence statute, that the conduct of which the actor needs notice is the assault, not the status of the actor's relationship to the victim. *Childress v. State*, 285 S.W.3d 544, 552 (Tex. App.—Waco 2009, pet. ref'd). *See also Watkins v. State*, No. 10-23-00040-CR, 2023 Tex. App. LEXIS 8950, at *8 (Tex. App.—Waco Nov. 30, 2023, no pet.) (not designated for publication). We see no difference in holding the same in this context. Thus, being in a substantial personal relationship is a circumstance of status, not a form of conduct, an act, a transaction, or an event for which Raines requires notice.

Because the act of assault is the key for "sameness," the original information gave adequate notice to Raines to prepare a defense. Accordingly, the trial court did not err in denying Raines's motion to quash on this ground.

*Amy's Charge*

Raines also questions whether the prior charge of assault bodily injury by striking Amy with Raines's hand is the "same" as the subsequent charge of occlusion assault for the purposes of the statute of limitations. Raines claims that the original indictment

charged Raines with causing bodily injury to Amy, with whom Raines has or has had a dating relationship, by impeding the normal breathing or circulation of the blood of Amy by applying pressure to the throat or neck or blocking the nose or mouth of Amy—in other words, *occlusion assault*. In the subsequent indictment, Raines was charged with causing bodily injury to Amy, a member of Raines's family or member of his household or person with whom he has or has had a dating relationship, by striking her with his hand. The difference between the two indictments, Raines argues, is the additional description of Raines's and Amy's relationship,[1] and more significantly, the type of bodily injury alleged.

The State, however, argues it is the *first* count of the original indictment, not the second count alleging occlusion assault, that would have put Raines on notice to defend against a bodily injury assault on Amy as alleged in the subsequent indictment. In that first count, Raines was charged with violating a condition of his bond on or about February 8, 2016 by striking Amy, a person with whom Raines has or has had a dating relationship, with his hands or applying pressure to her neck or throat. A person commits this type of offense if, in violation of a condition of bond set in a family violence case and related to the safety of a victim, the person knowingly or intentionally commits family violence. *See* TEX. PENAL CODE § 25.07(a)(1). Family violence means an act by a member of a family or household against another member of the family or household that is

---

[1] We have already determined that the status of a defendant's relationship with a victim is not conduct of which the defendant needs notice. *See Childress v. State*, 285 S.W.3d 544, 552 (Tex. App.—Waco 2009, pet. ref'd). *See also Watkins v. State*, No. 10-23-00040-CR, 2023 Tex. App. LEXIS 8950, at *7-9 (Tex. App.—Waco Nov. 30, 2023, no pet.) (not designated for publication). Thus, we will not further discuss this part of Raines's argument.

intended to result in, as applicable to this case, *bodily injury*. *See* TEX. FAM. CODE § 71.004.

As noted previously, Raines was charged in the subsequent indictment with causing bodily injury to Amy, a member of Raines's family or member of his household or person with whom he has or has had a dating relationship, by striking her with his hand. A person commits an offense of continuous violence against the family if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1) against another person who may be a member of a family or household as defined by the Texas Family Code. *See* TEX. PENAL CODE § 25.11(a). An offense under section 22.01(a)(1) is a bodily injury assault. *See id*. § 22.01(a)(1).

When comparing the two charging instruments for "sameness" of the event, the language describing the act against Amy which was used in the subsequent indictment was very similar to the language used in the original indictment, except to delete the plural of "hand" and the language, "or applying pressure to her neck or throat." Thus, count one of the original indictment alleges the same act of causing bodily injury by striking Amy and requires the same proof as the subsequent indictment. Further, we cannot say that the offense in the subsequent indictment broadened or substantially amended the offense alleged originally such that the offense in the subsequent indictment is barred by limitations. *See Hernandez v. State*, 127 S.W.3d 768, 772 (Tex. Crim. App. 2004). We conclude that count one of the original indictment gave adequate notice to Raines to prepare a defense to the subsequent indictment. *See State v. West*, 632 S.W.3d 908, 911 (Tex. Crim. App. 2021).

Accordingly, the trial court did not err in denying Raines's motion to quash on this ground.

Raines's first issue is overruled.

**HEARSAY**

In his second issue, Raines contends the trial court erred in allowing the testimony by one investigator about hearsay statements by another investigator during the initial hearing on the State's Motion for Finding of Forfeiture by Wrongdoing.

Under the forfeiture by wrongdoing doctrine, a defendant is barred from asserting his right of confrontation when he has wrongfully procured the unavailability of the witness. *Shepherd v. State*, 489 S.W.3d 559, 573 (Tex. App.—Texarkana 2016, pet. ref'd) (citing *Giles v. California*, 554 U.S. 353, 359-362, 128 S. Ct. 2678, 171 L. Ed. 2d. 488 (2008)). Article 38.49 of the Texas Code of Criminal Procedure is a codification of the forfeiture by wrongdoing doctrine. *See* TEX. CODE CRIM. PROC. art. 38.49; *see also Brown v. State*, 618 S.W.3d 352, 355 (Tex. Crim. App. 2021). The statute requires the trial court to "determine, out of the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence." TEX. CODE CRIM. PROC. art. 38.49(c).

The State's Motion for Finding of Forfeiture by Wrongdoing was filed on August 12, 2020, six days before Raines's initial trial. The hearing on the motion was held on August 14, 2020.[2] Raines objected to Investigator Johse, with the Brazos County District

---

[2] As we discovered, and was noted by the State in its response to Raines's third issue, the volume of the Reporter's Record containing this hearing, Volume 8, is incorrectly dated August 14, 2022. It is clear from the appellate record that the year the hearing took place was 2020. At the beginning of the hearing, the trial court stated, "We are set for a motion for finding of forfeiture by wrongdoing and the State just this morning filed another motion to permit witness testimony by realtime videoconference…." The motion filed "just

Attorney's Office, testifying as what actions Investigator Stephenson, with the Montgomery County District Attorney's Office, stated he took in attempting to serve a subpoena on Amy and Suzanne. The trial court overruled the objection.

Assuming without deciding the trial court erred, Raines was not harmed. Although the trial court eventually granted the State's motion and the trial began, the trial court declared a mistrial because Raines and officers of the court were potentially exposed to the Covid virus. Prior to the mistrial, Stephenson testified in trial about the steps he took to serve a subpoena on Amy and Suzanne. He was cross-examined about those efforts. These were the same, but more detailed, facts testified to by Investigator Johse at the first hearing on the State's motion. Shortly before Raines's second trial convened in 2022, the State filed a Supplemental Motion for Finding of Forfeiture by Wrongdoing and a second hearing was held. At this second hearing, the trial court took judicial notice of the testimony from the first hearing which included Johse's testimony regarding what Stephenson had told him. However, the State also introduced Investigator Stephenson's testimony from Raines's first trial into evidence. Raines did not object.

It is well-established that "erroneously admitted evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *see*

---

this morning" was contained in the Clerk's Record and was file stamped on August 14, 2020 at 9:15 a.m. We believe the 2022 date on Volume 8 is merely a typographical error in light of the trial court's statement and especially in light of the fact that a second forfeiture hearing and a second trial occurred in, and the reporter's record was prepared in, 2022.

*also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010). Because the same information by Stephenson, himself, was admitted at the second hearing without objection, if there was any error in the admission of Stephenson's testimony through Johse at the first hearing, it was harmless. *See Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29.

Raines's second issue is overruled.

### WAIVING SIXTH AMENDMENT RIGHTS

In his third and final issue, Raines contends the trial court erred in granting the State's motion and supplemental motion for a finding of forfeiture by wrongdoing. Specifically, Raines contends the State failed to demonstrate by a preponderance of the evidence that it made a good faith effort to locate the witnesses and that the witnesses' absences were wrongfully procured by Raines.[3]

#### *Article 39.49 Basics*

As noted in Raines's second issue, Article 38.49 of the Texas Code of Criminal Procedure, the codification of the forfeiture by wrongdoing doctrine, provides that a defendant who "wrongfully procures the unavailability of a witness or prospective witness . . . may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence . . . [and] forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness." TEX. CODE CRIM. PROC. art.

---

[3] Raines briefs this issue as to both Amy and Suzanne. Whether the trial court erred in granting the State's motions as to Amy is moot. Amy appeared at Raines's second trial, and the motions were granted only as to Suzanne after the second hearing. Thus, we will not discuss whether the trial court erred in granting any motion as to Amy.

38.49(a). The evidence to be considered by the trial court in determining forfeiture by wrongdoing is "[e]vidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness." *Id.* (b). The party offering evidence of wrongdoing is not required to show that "the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability," the actions constituted a criminal offense, or that any statements offered are "reliable." *Id.* (d). Further, the doctrine of forfeiture by wrongdoing may apply even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable. *See Gonzalez v. State*, 195 S.W.3d 114, 125 (Tex. Crim. App. 2006).

### *Standard of Review*

The parties agree, and this Court has held, that we review the trial court's decision on a motion for a finding of forfeiture by wrongdoing for an abuse of discretion. *See Shepherd v. State*, 489 S.W.3d 559, 572 (Tex. App.—Texarkana 2016, pet. ref'd). *See also Thompson v. State*, No. 10-16-00238-CR, 2017 Tex. App. LEXIS 6971, at *3 (Tex. App.—Waco July 26, 2017, no pet.) (not designated for publication). *See also Byrd v. State*, No. 07-20-00234-CR, 2022 Tex. App. LEXIS 4773, at *13-14 (Tex. App.—Amarillo July 13, 2022, pet. ref'd) (not designated for publication). If the trial court's decision is within the zone of reasonable disagreement, it has not abused its discretion, and we defer to that decision. *Shepherd*, 489 S.W.3d at 572. When assessing evidence regarding acts alleged to have procured a witness's unavailability, we draw all reasonable inferences in favor of the trial court's finding. *See Brown v. State*, 618 S.W.3d 352, 357 (Tex. Crim. App. 2021); *Byrd*, 2022

Tex. App. LEXIS 4773, at *14. Further, direct or circumstantial evidence may be used to show that the defendant's wrongful conduct caused a witness's unavailability. *See Baxter v. State*, No. 02-22-00258-CR, 2023 Tex. App. LEXIS 8944, at *40-41 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (not designated for publication) (citing *Brown*, 618 S.W.3d at 357 ("[C]ourts have recognized that procurement or causation need not be proven directly, but may be established by inference.") and 23 Corpus Juris Secundum, Criminal Procedure and Rights of Accused § 1182 (2023) ("Circumstantial evidence may be used to establish, in whole or in part, that the witness's unavailability was procured by the defendant.")). If there are no findings of fact, as in this case, we review the evidence in the light most favorable to the trial court's ruling and assume the court made findings that are supported by the record. *Shepherd v. State*, 489 S.W.3d 559, 572 (Tex. App.—Texarkana 2016, pet. ref'd). We may not substitute our decision for that of the trial court. *Id*. at 573.

### *Good Faith Effort*

We begin with Raines's complaint that the trial court abused its discretion when the State did not demonstrate by a preponderance of the evidence that it made a good faith effort to locate Suzanne. For purposes of the Confrontation Clause, a witness is "unavailable" if the witness does not appear for trial despite the State's good faith efforts to obtain the witness's presence at trial. *Reed v. State*, 312 S.W.3d 682, 685 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Ledbetter v. State*, 49 S.W.3d 588, 592 (Tex. App.—Amarillo 2001, pet. ref'd).

Because the trial court took judicial notice of the testimony presented in both

hearings, we consider what steps the State took in securing Suzanne's presence for both the first trial and the second trial. Prior to the first trial, which began on August 18, 2020, Melissa Carter, the victim's assistance coordinator for Brazos County, travelled on August 4, 2020, with prosecutors and Investigator Johse (the State's team) to Willis, Texas where Suzanne and Amy lived together in a gated community. The State's team arrived at the front gate at 10:00 a.m., and the security guard gave them access to the neighborhood. They knocked several times on the door, but neither Suzanne nor Amy came to the door. Johse heard noises in the house consistent with people walking around and dogs barking. A car registered to Suzanne was parked in the driveway. Carter called both Amy and Suzanne on their cell phones and left messages requesting a call back. Neither called. The State's team was on site for about 30 minutes. On the Wednesday before the trial, Carter called Amy and Suzanne again and left messages. The calls were not returned.

Investigator Stephenson, with the Montgomery County District Attorney's Office, also tried to serve Amy and Suzanne one or two weeks before the first trial. He went to the residence five or six times for a week at different times of the day to try to make contact with them. He rang the doorbell and knocked on the door "until it was annoying." On occasion, he would walk around the house to see if anyone was there. He never saw anyone at home but saw Suzanne's car there. Generally, Stephenson waited at the residence between 5 to 20 minutes before leaving. Once, however, he waited for approximately an hour, watching the house. He was not able to serve the subpoena on Amy or Suzanne. Stephenson was going to try to serve the subpoena the

morning of trial. He was to contact Johse if he was successful. Johse was not contacted.

Testimony for Raines's second trial began on October 11, 2022. Melissa Carter said she spoke to Suzanne once in January of 2021. Johse and the prosecutor were present for that conversation. Suzanne was very clear that she would not come to court and would not make herself available to receive a subpoena or to be at court to testify. When meeting with Amy a month before trial, Amy told the State's team that Suzanne was avoiding process of service, but she also told them where Suzanne was and gave them Suzanne's phone number. Immediately after the meeting, the State's team went to Suzanne and Amy's home in Willis. Amy did not go with them because she did not want Suzanne to know that Amy was meeting with them. Johse knocked on the door numerous times. Carter then called and texted Suzanne. They were unsuccessful in contacting her.

Raines asserts the State's efforts to contact Suzanne did not represent a good-faith attempt because Suzanne was not suddenly non-cooperative, as was the case in *Byrd v. State*, No. 07-20-00234-CR, 2022 Tex. App. LEXIS 4773, at *16 (Tex. App.—Amarillo July 13, 2022, pet. ref'd) (not designated for publication). Raines argues Suzanne had always been uncooperative and unwilling to prosecute Raines, and the State could have done more to ensure Suzanne's presence, especially during the break between trials. Whether Suzanne had always been unwilling to prosecute Raines is not dispositive. *See Stapp v. State*, No. 06-23-00016-CR, 2023 Tex. App. LEXIS 6443, *12 (Tex. App.—Texarkana Aug. 23, 2023, no pet.) (not designated for publication). That circumstance in *Byrd*, was just that—a circumstance. It was not regarded in the appellate court's opinion as a requirement to prove good faith.

Further, Raines does not suggest what else the State could have done to secure Suzanne's presence at trial. The State attempted to serve an out-of-town subpoena on multiple occasions, either through Johse or Stephenson before the first trial. In 2021, Suzanne made it clear to the State that she was afraid and was going to avoid service of a subpoena at all costs. When the State discovered Suzanne was at home through a discussion with Amy a month before the second trial, it made another attempt to serve Suzanne. All attempts, in 2020 and in 2022, were unsuccessful.

"Our role, … , is not to play armchair quarterback." *Byrd v. State*, No. 07-20-00234-CR, 2022 Tex. App. LEXIS 4773, at *16 (Tex. App.—Amarillo July 13, 2022, pet. ref'd) (not designated for publication). As the United States Supreme Court has observed, "it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, [cite omitted] but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy v. Cross*, 565 U.S. 65, 71-72, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (per curiam). The State is not required to engage in clearly futile activities before a trial court can, in its discretion, determine that the State made good-faith efforts to produce a witness at trial. *Ledbetter v. State*, 49 S.W.3d 588, 594 (Tex. App.—Amarillo 2001, pet. ref'd). Further, given the standard of review, we will not speculate and consider what else the State could have done. *See Hardy*, 565 U.S. at 72 ("the deferential standard of review set out in 28 U. S. C. §2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken.").

Thus, viewing the evidence in the light most favorable to the trial court's ruling and also drawing all reasonable inferences in favor of the trial court's ruling, the evidence supports a showing of good faith. Accordingly, the trial court did not abuse its discretion in granting the State's motion to forfeit for this reason.

### Conduct Designed to Prevent

We next address Raines's complaint that the trial court abused its discretion because there was no evidence that Raines directly threatened Suzanne to keep her from testifying. Whether Raines directly threatened Suzanne is also not dispositive. The question is, did Raines engage in conduct intended to prevent Suzanne from testifying? *See* TEX. CODE CRIM. PROC. art. 38.49(b). *See also Stapp v. State*, No. 06-23-00016-CR, 2023 Tex. App. LEXIS 6443, *12 (Tex. App.—Texarkana Aug. 23, 2023, no pet.) (not designated for publication).

The trial court admitted evidence that Raines was violent toward Amy. Through 13 offense reports, the trial court considered evidence that Raines had strangled, threatened, and "assaulted" Amy, grabbed Amy, grabbed Amy's hair, and killed Amy's dog. Sometimes, the responding officers reported that marks could be seen on Amy. One time, when Amy sought refuge in a *Michael's* store, Raines kicked on the doors which employees had locked to keep Amy safe. Some of these incidents occurred out of retaliation for actions by Amy which Raines disliked. A 14th offense report, which was also admitted into evidence, concerned Suzanne. Raines had been angry with Amy who left the house to defuse the situation. Raines then became threatening toward Suzanne. A third party in the house tried to resolve this situation but Raines ultimately struck

Suzanne with a closed fist on the left side of Suzanne's face. The punch left Suzanne with a cut above her eye and a swollen, bloody face.

Recordings of phone calls from Raines to Amy and Suzanne while Raines was in jail, all occurring within 10 days from the date of the first hearing in 2020, were also admitted into evidence. Sgt. Belangeri, with the Brazos County Sheriff's Office, sponsored the admission of the recordings. She and Melissa Carter agreed the main theme of these calls was to convince Amy and Suzanne not to appear at trial because, according to Raines's explanation during the calls, if there were no witnesses, the case against him would be dismissed. In two of the recordings, Raines left a voicemail on Amy's phone and two minutes later, left a voicemail on Suzanne's phone. Raines's message to Suzanne's phone was that it would be better if no victims appeared at trial. He told her that if no victims appeared, there would be no "offense." Although there were no recordings of actual conversations between Raines and Suzanne, Belangeri and Carter also agreed that the phone calls between Amy and Raines demonstrated Suzanne was with Amy and in constant contact with Amy.[4]

Suzanne told authorities she was extremely afraid of Raines because he was violent. She feared Raines would retaliate against both her and Amy if they cooperated with police. Suzanne made it clear to the State that she would not come to court to testify because she feared retaliation. The evidence showed Raines had retaliated before.

---

[4] It was established that Suzanne and Amy lived together and the voicemail left on Suzanne's phone showed that Raines believed Suzanne was in contact with Amy because he also let Suzanne know that he could not reach Amy and wondered if everything was okay.

In determining whether Raines's conduct was intended to keep Suzanne from testifying, it is pertinent to know that Amy was afraid of Raines as well. She told Carter that physical violence and death threats were a part of her relationship with Raines. Amy had known Raines since she was 14 years old and knew that certain words, phrases, and looks were Raines's ways of communicating threats to kill her. She was scared to see him in court—she knew he did not want her testifying or cooperating with the District Attorney's Office. She said Raines threatened to kill her *and* Suzanne if he went to prison in this case.

Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. *Giles v. California*, 554 U.S. 353, 377, 128 S. Ct. 2678, 171 L. Ed. 2d. 488 (2008). Moreover, as Melissa Carter testified,

> Family violence is different because victims know the abusers, they know their offenders, they usually know them intimately and very well. So they know how they speak, they know how they control, they know how they manipulate….It's more controlling, it's more veiled because their victims know them, they know what they mean. They don't have to speak it directly in those words.

The record here shows that Raines was violent to both Amy and Suzanne. Raines retaliated against Suzanne for something Amy did that displeased Raines. Suzanne was afraid of more retaliation. Raines communicated to Amy and Suzanne that if no victims appeared, his case would be dismissed. Amy knew that Raines could threaten her without directly communicating a threat. Because Suzanne and Amy lived together with Amy's children and were in contact with each other, it would be reasonable for the trial

court to infer that Suzanne understood indirect threats as well. It would also be reasonable for the trial court to infer that Suzanne understood from Raines's calls there would be consequences if she appeared in court or cooperated with the State.

Thus, viewing the evidence in the light most favorable to and also drawing all reasonable inferences in favor of the trial court's ruling, the record supports the trial court's determination that Raines engaged in conduct intended to prevent Suzanne from testifying. Accordingly, the trial court did not abuse its discretion in granting the State's motion to forfeit for this reason.

Raines's third issue is overruled.

**CONCLUSION**

Having overruled each issue presented on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Rose[5]
Affirmed
Opinion delivered and filed August 1, 2024
[Do not publish]
[CR25]

---

[5] The Honorable Jeff Rose, Senior Chief Justice (Retired) of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.